106 So.2d 746 (1958)
Elgene REINNINGER et al.
v.
DELTA FIRE & CASUALTY CO. et al.
No. 4685.
Court of Appeal of Louisiana, First Circuit.
November 21, 1958.
*748 Watson, Blanche, Wilson, Posner & Thibaut, David W. Robinson, Baton Rouge, for appellants.
Durrett, Hardin & Hunter, Baton Rouge, Erlo J. Durbin, Denham Springs, for appellees.
ELLIS, Judge.
This is a suit for personal injuries brought by Elgene Reinninger, the driver of a 1956 Ford. The owner of the car joined as a party plaintiff seeking property damages to his automobile. The accident occurred near the intersection of U. S. Highway 190 and Cora Drive, in East Baton Rouge Parish, on January 21, 1957. The plaintiffs allege the accident resulted from the negligence of the driver of a truck which was entering the highway from Cora Drive.
Upon trial the lower court rendered judgment in favor of the plaintiff, Reinninger, in the amount of $829 and in favor of the owner of the vehicle Reinninger was driving in the amount of $805.
The defendants appealed, and the appeal has been answered, seeking an increase of the award of the District Court.
U. S. Highway 190 is a two-lane paved highway running east and west at the scene of the accident. Cora Drive is a two-lane black topped street running north and south and intersects the highway from the south but does not cross it. A "T" intersection is formed by the junction of these two road-ways. There are no stop signs at the intersection but in the record it is admitted that U. S. Highway 190 is a right of way street and Cora Drive an inferior one.
The driver of the Paul truck brought his vehicle to a stop on Cora Drive at the intersection and waited there for some minutes due to the traffic on the highway. He then entered U. S. Highway 190 intending to make a left turn and proceed toward Baton Rouge. Reinninger, in an attempt to avoid colliding with the Paul truck, swerved his automobile to the left and applied his brakes. He avoided striking the truck but the automobile skidded, went off the highway on the south side and turned over twice, eventually colliding with a guy wire of a utility pole, causing his injuries and damage to the automobile.
The owner of the automobile brought suit to recover the damages to his car and Reinninger seeks damages for personal injuries. The driver of the truck, Leo Paul, and his partner, R. H. Paul, as well as the partnership they operate, and their public liability insurer, were joined as defendants.
The plaintiffs both contend the accident was due to the sole negligence of the driver of the truck, Leo Paul.
The defendants deny any negligence on the part of Leo Paul and plead contributory negligence on the part of Reinninger which they maintain could be imputed to the owner of the automobile. Also that Paul had preempted the intersection.
Paul's version of the accident is that he made a left turn into U. S. Highway 190 and proceeded a distance of over one block, when he saw the Reinninger car was out of control as it was passing some other vehicles in his rear; that he stopped his car and went back to the scene of the *749 accident to render assistance. This testimony is in direct conflict to the testimony of Reinninger, who testified that he first saw the pick-up truck when it was parked at the intersection of the highway and Cora Drive and at a time when he was about a block and one-half east of the intersection proceeding at approximately 50 miles an hour. He further stated he was about one-half block from the intersection when the pick-up truck pulled out into the highway; that he immediately applied his brakes and cut to his left to avoid striking the pick-up truck.
Alvin Crick was working at a service station located on the west corner of the intersection. He heard the skidding of tires and turned around, when he saw the Reinninger automobile skidding approximately 100 feet east of Cora Drive, at which time the pick-up truck was in the center of the highway proceeding north across U. S. Highway 190.
The trial court was of the opinion the accident resulted from the sole negligence of Paul in entering U. S. Highway 190 after having brought his truck to a stop on Cora Drive because of the close proximity and speed of the approaching vehicle driven by Reinninger. He was of the opinion Paul created a perilous situation which required the driver of the automobile "to resort to extraordinary means to avoid striking the Paul truck". As is usual in these types of cases there is much testimony which is entirely contradictory. In such cases the findings of the trial court are to be given great weight and while no written reasons were given, the oral reasons have been given for judgment, and were dictated, and are in this record. Evidently the court believed Reinninger's testimony as to how the accident occurred and in the absence of manifest error, where the issues are purely factual, we are reluctant to disturb the findings of the lower court.
The defendants apparently are relying upon the doctrine of preemption. This is argued upon Reinninger's own estimate and that of Crick that Reinninger was about 100 feet from the intersection at the time his car was skidding and that Paul had the right of way by virtue of preempting the intersection. If the estimate of 200 feet be considered and Reinninger's own estimate of his speed of 50 miles per hour accepted, Reinninger would have had about three seconds in which to avoid the accident.
It must be borne in mind that upon the highway where this accident happened the speed limit is 60 miles per hour and there is nothing in this record to show Reinninger was traveling at an excessive or negligent rate of speed. The testimony of Crick, which the trial court evidently took as correct, shows the Paul truck was about the middle of the intersection when Reinninger's car had already started skidding. Having fixed the point where the Reinninger vehicle was located when Paul entered the intersection we cannot see how the intersection had ever been preempted by Paul. A driver entering a favorite street must regard the oncoming traffic and govern himself accordingly. Even though it be admitted Paul entered the intersection ahead of the Reinninger car this right of preemption cannot be accorded a driver who enters a favorite street without any regard to oncoming traffic. If a driver on an unfavored street reaches an intersection before one on a favorite street this alone does not give the disfavored driver the right to proceed across the favored street without ascertaining that he could safely cross under ordinary circumstances. See Dickerson v. Lorren, La.App., 45 So.2d 221. Also, a motorist entering a street which is a preferred thoroughfare has the burden of extra care and caution. Blakeslee v. Hamm, La.App., 56 So.2d 156. Further, when an intersection involves passage across or into a favored thoroughfare an obligation of exercising unusual care and caution rests upon the driver on the less favored thoroughfare. McClenaghan v. United States Fidelity & Guaranty Co., La.App., 79 So.2d 373. The preemption of *750 an intersection by a motorist entering from an unfavored street into an intersection with right-of-way thoroughfare requires not only the first entrance into the intersection by the motorist entering from the side street but that such intersection be entered with reasonable opportunity and expectation of clearing the intersection without any obstruction to the crossing thereof by other vehicles. See Bahry v. Folse, La.App., 83 So.2d 912.
Under the evidence and conclusions of the trial court we cannot accord the defendant, Paul, the right of preemption of the intersection. The mere fact that he may have gotten there first makes no difference. We held this in Smith v. Manufacturers Casualty Ins. Co., La.App., 83 So.2d 164 and Sonnier v. United States Fidelity & Guaranty Co., La.App., 79 So. 2d 635.
We also must conclude that there was no negligence on the part of Reinninger since the evidence shows, and the trial court so found, that he did everything in his power to keep from striking the truck on its side and had the highway not been clear on his left lane of traffic he would have been forced to strike the truck about the center of the highway.
The defendants argue the application here of the rule of "sudden emergency" cannot be applied since it is necessary for its application that: (1) the peril or alarm must be caused by the negligence of the defendant; (2) the approach of peril from the standpoint of the plaintiff must have been reasonable, and (3) the appearance of danger must have been so imminent as to leave no time for deliberation. These requisites he has taken from Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 4, Part 2, Sec. 2733, Page 251. We agree with these requisites and certainly, in the present case, the peril was caused by the negligence of the defendant, Paul, in not heeding the approaching Reinninger vehicle at a distance too close for him to safely execute a left turn into the highway. The peril was realized by the plaintiff and he managed to keep from striking the Paul truck by skidding and pulling to his left. His belief that the action of defendant was dangerous and perilous to him appears to have been reasonable under the circumstances. Also, the appearance of danger was so imminent that no time was left for deliberation. According to the testimony of Reinninger and Crick, Paul could not have reasonably expected to clear the intersection without danger of collision if he had reasonably estimated the speed and proximity of Reinninger.
The lower court correctly fixed liability upon the defendant which leaves for determination the question of quantum.
The damages to the automobile were stipulated to be $805 which the lower court allowed. In addition the lower court awarded $750 for physical pain, suffering and mental anguish, as well as loss of wages, the sum of $54 for the bill of the Baton Rouge General Hospital and $25 to Dr. Stander. It is agreed that the actual amount charged by the hospital was $47.25, and therefore in the final judgment the amount awarded by the lower court should be reduced by the sum of $6.75. As to the bill of Dr. Stander counsel for defendant in his brief states: "Moreover, no bill from Dr. Leonard Stander has ever been filed in the record of this case and such amount should not have been allowed by the trial court without more substantiating evidence." It is shown that the plaintiff was taken to the Baton Rouge General Hospital soon after the accident where he remained for three or four hours and was treated by Dr. Stander whose report was admitted by agreement and constitutes the only medical evidence in this record, and it goes without saying that Dr. Stander charged something and it is true that the only testimony as to the actual amount was that of the plaintiff, however, we find in the record a statement of counsel for defendant as follows: "I am sure Dr. Stander *751 charged something for seeing him and Dr. Stander stated that he had x-rays made * * *", and counsel also stated "I would be willing to stipulate that Dr. Stander charged him $25.00 for what he did there." The plaintiff then started to testify again and the court broke in on the testimony and stated: "It is stipulated by and between counsel for plaintiff and defendants that without reopening the case further the bill of Doctor Stander and of the Baton Rouge General Hospital for the treatment referred to may be offered in evidence." We feel that sufficient proof was made as to Dr. Stander's bill, particularly in view of the admission or stipulation or willingness to stipulate made by counsel for defendant.
Counsel for plaintiff complains of the award as to the loss of wages by the plaintiff who testified that for three weeks he was confined to the house as a result of his back and knee injury and that he did not return to work for three months because he did not believe that he could stand on concrete as long as would be required of him in the performance of his duties. In the record is a written statement from Dr. Stander which shows only superficial injuries to the plaintiff as a result of the collision. Dr. Stander did not testify nor was his testimony taken by deposition. Plaintiff testified that he was examined by his nephew, a physician in Baton Rouge connected with the Standard Oil Company, but this doctor did not testify nor was any testimony obtained from him. Plaintiff also testified that he had an x-ray made by Dr. Brown of New Orleans. The testimony of this doctor was not given on the trial nor taken in any manner. In addition plaintiff testified that after three weeks he was up and about and went from Baton Rouge back to Lafayette although he did not go back to work. There is no testimony that he was treated by any physician or that he was confined to bed or that he wasn't, otherwise than working, going about his normal pursuits. Counsel for defendant in his brief argues that his failure to call his medical witnesses must give rise to the presumption that their testimony would have been unfavorable to him and cites some of the cases sustaining this position, viz., Thompson v. Audubon Ins. Co., La. App., 101 So.2d 752; Comforto v. Cloverland Dairy Products Co., La.App., 194 So. 43; Hines v. Heinkamp, La.App., 194 So. 731; Lee v. International Paper Co., La. App., 16 So.2d 679; Barnes v. American Mutual Liability Ins. Co., La.App., 80 So. 2d 151; Marsalis v. La Salle, La.App., 94 So.2d 120, and we thoroughly agree with him if plaintiff was to be awarded loss of wages for a full three months after the accident.
The only testimony upon which the judgment for pain and suffering could be based is the short letter of Dr. Stander dated May 13, 1957, in which he states in part and we quote:
"It was my impression that the diagnosis was contusion of the back and left knee. X-ray of the chest showed no recent injury. X-ray of the lumbo sacral spine showed no evidence of fracture, dislocation, or other abnormalities, and x-rays of the left knee showed no evidence of fracture, dislocation or bony pathology. Mr. Reinninger was treated symptomatically in the accident room and we have not heard from him since * * *".
Based on Dr. Stander's statement in the above letter the plaintiff's injuries were very superficial and minor. Another significant fact is the absence of plaintiff's wife as a witness, although plaintiff testified that his nephew, who was a doctor, recommended heat treatments and that they were given by his wife. During the three weeks stay in Baton Rouge after the accident he was at the home of Mr. Curtis, his brother-in-law. Mr. Curtis testified that plaintiff stayed at his home about three weeks, that during this time his back was hurting him and his knee. He stated that plaintiff was up and down and in bed most *752 of the time, and the treatment consisted of putting hot pads on his knee and back.
The district judge in his written reasons stated that the plaintiff was prevented from working at his job as a filling station operator for at least three months, and that he was making $75 per week at this station "and there was no evidence introduced to the contrary." We believe the point to be that there was no evidence introduced to corroborate or support the plaintiff's testimony. Had he introduced medical testimony or lay testimony which would show that his injuries were of such a serious nature as to cause him great pain and suffering or that there were objective symptoms to sustain his failure to work. The filling station referred to was his mother-in-law's and according to Mr. Curtis' testimony he did not work continously there.
We believe that considering the testimony and, more important, the lack of testimony, that astute and able counsel for plaintiff would have produced had it been available, to substantiate plaintiff's uncorroborated testimony. That three weeks loss of wages at $75 a week or the sum of $225 is all that could be awarded under this testimony or the lack of testimony, for this item. As to pain, suffering and physical injuries even the plaintiff's testimony is unimpressive as to any extraordinary pain and suffering on his part or any extraordinary physical injuries. The only treatment plaintiff had during the three weeks was a heat pad which he said his wife applied, however, she did not testify. He also stated that he took some aspirins during this time. Plaintiff also mildly testified that his knee was still bothering him, however, not enough to have gone to any doctor or had anything done about treating it. We therefore believe that $525 is not manifestly erroneous under the testimony in this record for plaintiff's mild pain and suffering.
For the above and foregoing reasons the judgment of the district court is amended by reducing the amount awarded plaintiff for medical bill paid to Baton Rouge General Hospital, to $47.25, and is affirmed in all other respects.
Costs to be paid by the defendants.
Affirmed.