126 So.2d 67 (1961)
Anthony J. LIVACCARI
v.
UNITED JEWISH APPEAL, INC., Norman Merkin and Royal Indemnity Company.
No. 21550.
Court of Appeal of Louisiana, Fourth Circuit.
January 3, 1961.
Rehearing Denied January 30, 1961.
Certiorari Denied March 3, 1961.
*68 Dodd, Hirsch, Barker & Meunier, Thomas J. Meunier, New Orleans, for plaintiff-appellant-appellee.
Adams & Reese, W. Ford Reese and George V. Baus, New Orleans, for defendants-appellants-Appellees.
SAMUEL, Judge.
This is an action for personal injuries and property damages resulting from a collision between an automobile owned and driven by the plaintiff and one owned by United Jewish Appeal, Inc., driven by its employee Norman Merkin and insured by Royal Indemnity Co., said latter owner, driver and insurer being defendants herein. There was judgment in the trial court in favor of the plaintiff and against the defendants, in solido, in the amount of $4,715.50. From this judgment both sides have appealed, the defendants seeking a reversal on the grounds of contributory negligence or, in the alternative, a reduction in the award, and the plaintiff seeking an increase in the award.
The accident occurred in the early afternoon, just after a rain which resulted in a wet road surface, at the intersection of U.S. Highways 51 and 61 at LaPlace, La. Highway 61 is a heavily traveled road running between New Orleans and Baton Rouge. It consisted of two lanes reserved for traffic traveling west towards Baton Rouge, a neutral ground separating west and eastbound lanes, and two lanes for traffic traveling east towards New Orleans. Highway 51 contained no neutral ground and runs from LaPlace towards Hammond. It came to an end as a highway at the intersection, where it entered at a right angle on the north side of 61, although a lesser road continues towards the river on the opposite side of 61. Highway 61 is the favored road and there are stop signs on 51 and on the lesser road.
As he approached the intersection the plaintiff was traveling east on the extreme south lane of 61 at a speed of something less than 40 miles per hour, the legal limit. The defendant car was proceeding south on 51, stopped in a perfunctory manner for the stop sign, or did not stop at all, and proceeded across the intersection. It crossed the two westbound lanes of 61, the width of the neutral ground, one eastbound lane, and ran directly into the path of the approaching plaintiff, all without slowing or stopping and at a high rate of speed. The plaintiff, who saw the other car only an instant before the collision, applied his brakes, swerved to his right and ran into the right front and side of the defendant car. Two or three highway trucks were parked in the neutral ground near the Baton Rouge side of the intersection and these partially obstructed the views of both drivers.
There can be no question about the negligence of the defendant driver, and indeed the defense makes no such contention.
*69 He was guilty of negligence, even if he did stop for the stop sign, in proceeding across the through highway, which had the right-of-way, into the path of the oncoming vehicle when it should have been obvious that his crossing could not be made in safety and without danger or obstruction to oncoming traffic. Solomon v. Travelers Indemnity Co., La.App., 87 So.2d 788; Rachow v. Ringwald, La.App., 87 So.2d 173; Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667; White v. Glass, La.App., 78 So.2d 57.
Nor can the defendants be accorded any right of preemption. The defendant driver appears to have blindly dashed in front of the plaintiff who was moving at a lawful speed on a main highway and the doctrine of preemption has no application to the motorist who rushes into the intersection a second or seconds before the driver on the right-of-way street arrives at the intersection. Gallioto v. Chisholm, La.App., 126 So.2d 63; Reinninger v. Delta Fire & Casualty Co., La.App., 106 So.2d 746; Bahry v. Folse, La.App., 83 So.2d 912; Gautreaux v. Southern Farm Bureau Casualty Co., supra.
We are of the opinion that the plaintiff was not guilty of contributory negligence. The defendants contend that he should have been able to see the approaching defendant car while it was still some distance away on Highway 51. The plaintiff did not observe the other car during the time he and it were approaching the intersection but he was under no legal obligation to make such an observation. The plaintiff's view was partially blocked by the parked trucks and, in any event, he had a right to assume that traffic on the less favored highway would observe the law, stop for the traffic sign and yield the right-of-way. Ehtor v. Parish, La.App., 86 So. 2d 543; Gautreaux v. Southern Farm Bureau Casualty Co., supra; Marler v. State, La.App., 78 So.2d 26; New Hampshire Fire Ins. Co. v. Bush, La.App., 68 So.2d 254.
We now address ourselves to the question of quantum. As a result of the accident the plaintiff complains of two injuries, one to his back and the other to his right knee. He continued to work regularly and lost no work time except for one or two days when he visited his doctor. He makes no claim for wages actually lost, although he testifies that he was able to work only with considerable difficulty and pain. Approximately four months after the automobile accident the plaintiff suffered a fall while working and injured his left knee. This injury to the left knee was a torn meniscus for which he received compensation for total and permanent disability (Livaccari v. Fidelity & Casualty Co. of New York, La. App., 118 So.2d 275).
The plaintiff saw Dr. Baker the day after the automobile accident, saw Dr. Battalora approximately five months after that accident and shortly after the second, or compensation accident, saw Dr. Haslam almost a year after the automobile accident, and was examined by Dr. Echols, who acted on behalf of the defendants, almost two years after the first accident. The first three doctors testified for the plaintiff and the last testified for the defendants.
Dr. Baker, who practiced general medicine and surgery and had considerable training and experience in orthopedics, was of the opinion that the plaintiff had a strain of the ligaments on the medical side of the right knee and a strain of the muscle ligaments of the lower back. He was of the opinion that the knee ligament was not torn. He saw the patient on eight occasions and discharged him approximately three months after the accident had occurred. It is interesting to note that on the last four or five visits the plaintiff complained of the knee and made no complaint about his back.
Dr. Battalora, a specialist in orthopedic surgery, was of the opinion that the plaintiff had a possible torn medical meniscus of the right knee and a possible mild lumbosacral strain. When the knee did not show sufficient improvement he advised surgery *70 which the plaintiff was unwilling to undergo. The plaintiff returned approximately a month after this last advice and at that time complained about the injury to his back. A lumbo-sacral support or corset was prescribed. When the patient continued to complain about his back this witness advised that he seek other orthopedic opinion.
Dr. Halsam, also an expert in orthopedic surgery, was of the opinion that the plaintiff had a possible tear of the cartilage in the right knee, a surgical situation, and felt that the back injury could have been either a lumbo-sacral sprain or a ruptured disk. Proof of a ruptured disk could be obtained only by surgical exploration or by a myelogram of the back and, the plaintiff being unwilling to undergo surgery, a myelogram, which involves minor surgical procedure, was not advised. He did advise continued use of the corset.
Dr. Echols, an expert in neuro-surgery and a witness for the defendants, testified only as to the back injury and stated that he could arrive at no conclusion as to whether or not the plaintiff had a ruptured disk but that he doubted the existence of such a rupture because of the absence of sufficient objective findings.
While we agree with plaintiff's contention that he should not be penalized because of his fortitude and willingness to continue work despite the pain involved, and that he has a right to refuse to undergo an operation, we are nonetheless impressed by the fact that he visited his first doctor only on eight occasions during the three months following the first accident and the other doctors only after his second accident. The plaintiff must bear the burden of proving both the existence of the injuries of which he complains and the causal connection between them and the accident for which the defendants are liable. He must establish his claims to a legal certainty by a reasonable preponderance of the evidence, and mere possibility, even unsupported probability, are not sufficient in themselves to support a judgment in his favor. Roberts v. M. S. Carroll Co., La. App., 68 So.2d 689. The defendants are not responsible for any aggravations or injuries which may have been caused by the second accident and none of the three doctors who saw the plaintiff after that second accident was able to say whether these injuries to the right knee and back were caused by the first or by the second accident. They did say that both accidents were consistent with, and could produce, the injuries to the back and both knees. The other doctor, who saw the plaintiff the day after the first accident and did not see him after the second, did not feel that his injuries were very serious and had discharged him prior to the second accident. Three of these four expert witnesses, in particular the last mentioned, were witnesses for the plaintiff.
The trial court awarded $4,000 for injuries and we are of the opinion that this is neither inadequate nor excessive.
In addition the trial court awarded $540 as damages to the plaintiff's automobile, this being an amount stipulated by the litigants, and $175.50 for medical expenses, which does not include a cost of $1,200 (as estimated by the medical testimony) for the possible future cost of knee and back operations not undergone by the plaintiff at the time of trial, slightly more than two years after the automobile accident, together with expert witness fees. We are in agreement with all of these awards with the single exception of the item of medical expense which should be increased by $58 for miscellaneous hospital expenses, etc., an item which was proved and apparently inadvertently omitted.
The disallowance of the plaintiff's claim of $1,200 for future operations, together with the disallowance of other claims connected with such operations and loss of working time, were proper in view of the fact that the plaintiff has failed to prove with the required legal certainty that *71 these operations were necessitated by the automobile accident.
The plaintiff also complains about the fact that the trial court did not allow his claims for costs paid by him to the clerk of court, to the court reporter and to other reporters for the taking of depositions. These are items of cost not ordinarily listed in the judgment as such and, if there be any dispute over their payment, the matter can be resolved by a rule to tax costs. For the purpose of making certain that this right is preserved for the plaintiff, we will reserve his right to file such a rule.
For these reasons the judgment appealed from is amended only insofar as to increase the award in favor of the plaintiff and against the defendants from the sum of $4,715.50 to the sum of $4,773.50, and to reserve to the plaintiff the right to file a rule to tax costs. As thus amended the judgment is affirmed, the defendants to pay all costs.
Amended and affirmed.