181 So.2d 475 (1965)
C. Wayne WAGGONER, Plaintiff-Appellant,
v.
MARQUETTE CASUALTY COMPANY et al., Defendants-Appellees.
No. 10491.
Court of Appeal of Louisiana, Second Circuit.
December 21, 1965.
*476 Love, Rigby & Donovan, Shreveport, for appellant.
Hal V. Lyons, Shreveport, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
On June 13, 1962, petitioner was a passenger in an automobile owned by his employer, L. A. Frey & Sons, and being driven by Everette S. Cole. The car, which was traveling west on a bridge across Red River, was halted for a traffic light on the Shreveport side of the bridge when a truck, owned by James V. Edmon and Carl W. Pruitt, d/b/a Bossier Automotive Machine Company, Inc., struck the rear of the car in which petitioner was a passenger. Plaintiff brought action to recover damages for back injuries allegedly resulting from the described accident. The lower court gave judgment in favor of plaintiff and of intervenor, Liberty Mutual Insurance Company. Plaintiff appeals asking for an increase in the award.
Liberty Mutual Insurance Company's intervention was filed in order to obtain reimbursement for workmen's compensation, medical payments and a compensation settlement paid plaintiff on behalf of its insured, L. A. Frey & Sons, it having been determined plaintiff was injured in the course and scope of his employment. At the beginning of the trial it was stipulated intervenor would be entitled to reimbursement in the event judgment was obtained by plaintiff against defendant.
One of the original defendants, Marquette Casualty Company, liability insurer of the remaining defendants, Edmon, Pruitt and Bossier Automotive Machine Company, is no longer a party to the suit for the reason the Marquette Casualty Company had been placed in rehabilitation and an order enjoining further proceedings against that company was signed by the District Judge on February 9, 1965.
A rather detailed chronology of the factual events and medical testimony will be necessary for a clear understanding of this case.
At the beginning of the trial, with the consent of counsel and the court, the following stipulation was dictated into the record:
"* * * that the defendants admit that the accident which occurred on *477 June thirteenth, 1962 occurred as a result of the negligence of their agent and employee, the defendants neither admitting the severity of the accident nor do they admit that all of the hospital and medical expenses for which the plaintiff has sued necessarily resulted by reason of the accident, but they do admit the initial liability for the accident. It is further admitted that the partnership, Bossier Automotive Machine Company and the partners, James V. Edmon and Carl W. Pruitt, are responsible in solido for whatever damages the Court determines were suffered by the plaintiff as a result of this accident of June thirteenth, 1962. And further, that Bossier Automotive Machine, Inc. which took over all of the assets of the initial partnership, including the liability for this accident, and therefore for whatever judgment the plaintiff is entitled, he is entitled to a judgment in solido against the initial partners, the partnership and the corporation itself."
It was further admitted the sum of $4,840.11 had been expended as medical expenses on behalf of Mr. Waggoner although defendant denied responsibility for medical expenses unless proved to be the result of the June thirteenth accident. It was likewise agreed the wage statements were correct and further that the failure of either party to call any specific witness or witnesses, including doctors, should not create any presumption against either party.
An additional important facet of the case arises from the fact that on November 12, 1962, five months after the original accident, plaintiff went to work as an employee of Cudahy Company. After some two and one-half days of work he suffered another accident or injury as the result of his attempting to unload the meat truck which he was driving. For this last "accident" the evidence reflects Travelers Insurance Company paid workmen's compensation, medical expenses and a final settlement totaling $7,285.61 on behalf of Cudahy. However, Travelers Insurance Company did not intervene in the present action and the records of the two compensation settlements together with copies of all medical expenses were introduced only for the purpose of showing there was a controversy between each company as to whether there was an injury in each case and to show the total amount of medical expense attributable to each.
Turning again to the events immediately following the accident of June 13 we find that after initial X-rays and hospitalization by Dr. Eddy and Dr. Garrett plaintiff was referred to Dr. Ray E. King who first saw him on July 3, 1962. Dr. King testified plaintiff was complaining of his low back aching and hurting and, although no definite pain was complained of in his legs, he stated at times he was having some tingling in his toes. Upon examination Dr. King found pain on palpation of the lower back and stiffness, with rotation and lateral bending restricted. The doctor ordered him hospitalized from July 3 until about July 12, 1962. At that time the patient was running some fever which the doctor later testified might have had a tendency to mask the symptoms.
On July 16 Waggoner was again seen by Dr. King who took X-rays of both the thoracic and lumbosacral regions of the spine. From these he found a slight forward slippage of the fifth lumbar vertebra on the sacrum and he felt there were some questionable defects in the pars interarticularis. The patient was again seen by Dr. King on August 13, 1962 at which time there were still complaints of pain in the low back at the L-4-5 level.
Finally, on August 21, 1962, Waggoner went to Dr. King who hospitalized him for two days for the purpose of doing a lumbar myelogram which showed no evidence of ruptured disc. From this negative finding Dr. King concluded plaintiff was suffering only a mild sprain and he was released to go back to work.
*478 Waggoner was seen again by Dr. King on November 19, 1962, at which time plaintiff reported that he had obtained a job on November 12; that he had gone to work for a packing company; that he had a helper the first two days but that on the day in question he had to work alone; that he picked up a hindquarter weighing about 195 pounds and developed severe sharp pain in the low back. Examination at that time indicated pain in the low back region, restricted bending and difficulty in standing up straight. There were no findings in the legs suggestive of disc injury. X-rays were taken and studied and again slippage was noted and a determination was made that there were congenital defects in the pars interarticularis of the lumbosacral joint. Waggoner was placed in a heavy back brace to immobilize his back in an effort to effect a cure through conservative treatment rather than surgery. Muscle relaxants were prescribed. Dr. King continued to treat Waggoner and ordered hospitalization on February 20, 1963 and performed a fusion operation the next day.
Considerable medical testimony makes up the major portion of the remainder of the transcript which reflects plaintiff suffered considerable pain, loss of wages, and was required to undergo another operation for the successful completion of the fusion. However, as we view this matter we must determine whether all, or what part, of plaintiff's injuries are attributable to the accident of June 13, 1962; that is, how much damage did plaintiff suffer as the result of defendant's fault under Louisiana Civil Code Articles 2315 and 2316.
We have been cited to a substantial line of cases to the effect that where a person who enjoys good health suffers an accident and within a short time thereafter a dormant, pre-existing illness or old injury disconnected with the accident flares up or becomes active, it will be presumed the flare-up was not a coincidence and that it was set in motion as a direct result of the accident. See Peppers v. Toye Brothers Yellow Cab Company (La.App., Orl.1940) 198 So. 177; Kline v. Columbia Casualty Co. (La.App. 2 Cir., 1963) 155 So.2d 82, and cases cited.
However, both appellant and appellee rely principally upon the holding in Rainwater v. Timothy (La.App., Orl.App.1956) 87 So.2d 11. In the Rainwater case plaintiff, 72 years of age, was suffering from high blood pressure and arteriosclerosis. While driving his automobile in the city of New Orleans his vehicle was struck from the rear by defendant's truck. Plaintiff suffered abrasions and contusions to his left leg, knees and elbows. No fractures developed. The court was convinced from the medical testimony the injuries plaintiff sustained were completely cured within three months at most, even taking into consideration that older people suffer more severe injuries than do younger persons. Approximately a year later plaintiff fell in his bathroom due to a "weakening" of his foot and claimed the injuries sustained therefrom were directly caused by the disability produced in the automobile accident of January 28, 1953. The court concluded the injuries sustained in the automobile accident, the bruises, the contusions, the ecchymosis, did not cause disability beyond four months and that plaintiff was completely cured of any injury or aggravation sustained in the automobile accident of January 28, 1953. In this connection the court held:
"A tort-feasor is liable only for the direct and proximate results of his wrongful act. He cannot be held responsible for the result of a separate, independent and intervening act with which he had no active connection. If a person receives an injury through the negligent act of another, and the injury is afterwards aggravated and recovery retarded by a subsequent accident not resulting from the failure of the injured person to use ordinary care, the subsequent accident becomes a sequence or natural result of the original injury and the tort-feasor is liable for the entire damage sustained. However, the reverse is true if the subsequent *479 injury is attributable to a distinct, intervening cause, for which the tort-feasor would be liable only for the original injury and not the subsequent one."
In conclusion the court stated plaintiff had the burden of proving his fall in the bath was the natural and proximate result of the injury occasioned to him by the automobile collision and was not the result of a separate independent and intervening act for which defendant was in no way responsible. Having failed to bear the burden of so proving, judgment was rendered in favor of defendant.
In the case of Livaccari v. United Jewish Appeal, Inc. (La.App. 4 Cir., 1961) 126 So. 2d 67, plaintiff was injured in an automobile accident and was attended by a physician on eight different occasions and was discharged to return to work. Shortly thereafter plaintiff suffered another injury of a nature similar to the first and this latter was occasioned by a fall at his work. He sought to recover for all of his damages from the defendant who was responsible for the first accident. The Court there held:
"* * * [P]laintiff must bear the burden of proving both the existence of the injuries of which he complains and the causal connection between them and the accident for which the defendants are liable. He must establish his claims to a legal certainty by a reasonable preponderance of the evidence, and mere possibility, even unsupported probability, are not sufficient in themselves to support a judgment in his favor. Roberts v. M. S. Carroll Co., La.App., 68 So.2d 689. The defendants are not responsible for any aggravations or injuries which may have been caused by the second accident and none of the three doctors who saw the plaintiff after the second accident was able to say whether these injuries to the right knee and back were caused by the first or by the second accident. They did say that both accidents were consistent with, and could produce, the injuries to the back and both knees. The other doctor, who saw the plaintiff the day after the first accident and did not see him after the second, did not feel that his injuries were very serious and had discharged him prior to the second accident. * * *"
We are in agreement with the rules set forth in the cases cited supra. Since the trial judge in the instant case gave no written reasons for his judgment we conclude he found plaintiff had failed to bear the burden of proving the original accident caused injury to the plaintiff beyond the time he was discharged to go back to work by Dr. King. Defendant can only be held liable for those damages caused by his fault. We find only those damages for pain and suffering, loss of wages and medical expenses suffered by plaintiff up until the time he returned to work have been proved to be attributable to the accident of June 13, 1962.
The minutes reflect the lower court awarded plaintiff judgment for loss of earnings and medical expenses from the date of the accident to November 8, 1962, and $1000 for pain and suffering. The record supports the award for wages and medical expenses. However, we think the medical evidence alone reflects the award of $1000 for pain and suffering is so inadequate as to amount to an abuse of discretion under Louisiana Civil Code Article 1934(3) and should be increased to the sum of $5000.
For the foregoing reasons the judgment of the lower court is amended so as to increase the award to plaintiff from $3678 to $7,678 and as thus amended is affirmed at appellee's cost.
Amended and affirmed.