REGAN, Judge.
The plaintiff, John W. Apffel, filed this suit against the defendants, the Greyhound Corporation, and John A. Guillory, the operator of one of Greyhound’s busses, endeavoring to recover the sum of $155,515.15 representing damages for personal injuries and medical expenses incurred by him as the result of the negligence of Guillory in striking the plaintiff’s automobile with the bus.
The defendants answered and denied that they were guilty of any negligence which formulated the proximate cause of the accident.
After a trial on the merits, the lower court rendered judgment in favor of the plaintiff and against the defendants solidarity in the amount of $3,704.76. From that judgment, the plaintiff has prosecuted this appeal.
The record discloses that on March 15, 1962, the plaintiff was driving his automobile in U.S. Highway 61 in the general direction of Kenner, Louisiana. In the intersection of Jackson Street and Highway 61, the plaintiff’s vehicle was truck in the rear by a bus owned by the Greyhound Corporation and operated by John A. Guil-lory. As a result of this collision, the plaintiff was injured, and he was treated by his family physician, Dr. Isadore Yager, who subsequently referred him to Dr. Irwin Cahen, an orthopedic surgeon, for consultation. An examination revealed that the plaintiff evidenced injury to his cervical spine and to the lumbosacral area of his back. He was treated by Dr. Cahen, who saw him intermittently until late June, 1962, when he was discharged.
In the course of treatment for this injury, the plaintiff worked intermittently for about three weeks; thereafter, he took an eleven day vacation, which ended on July 9, 1962, at which time he had no pain in his back.
On July 10, 1962, the plaintiff returned to work at his place of employment, Pel-lerin Laundry Machinery Sales Company. On that day, he was assigned together with a fellow employee to install some heavy *125 machinery in a local laundry, course thereof, it became necessary for him to remove a large pipe, which was approximately three inches in diameter. Since the pipe was rusty, he was required to strike it with a large wrench, after which, he used a heavy Stilson wrench in an effort to unscrew the pipe. When he was in the act of applying great pressure on the wrench, he felt pain in the lumbar area of his back. He discontinued working and visited the offices of Dr. J. T. Nix. In the
Dr. Nix examined the plaintiff, found muscle spasm and advised him to wear a lumbosacral support for approximately one month. Dr. Nix- suggested that the plaintiff could return to light work on July 16, 1962, and to regular duty with unrestricted activity on July 20, 1962.
From that day on, the plaintiff’s condition worsened, his primary symptoms being low back pain which radiated down his right leg. On September 4, 1962, he consulted Dr. Byron Unkauf, who concluded that there was some involvement of the fibers of the annular ring in the disc between the L4 and L5 vertebrae.
Dr. Unkauf eventually referred the plaintiff to Dr. Raeburn Llewellyn, an expert in the field of neurosurgery. Dr. Llewellyn performed a myelogram, which was negative. Conservative treatment was then tried which proved unsuccessful. Thereafter a procedure described as a disc-ogram was performed on the plaintiff, which revealed the presence of a ruptured intervertebral disc. Surgery ensued for the removal thereof, and the plaintiff now insists that the rupture of this disc was caused by the accident of March 15, 1962, and seeks to have the lower court’s award raised in conformity with this reasoning.
The defendants concede liability for the accident of March 15, 1962, and, since they have not taken an appeal from the judgment awarding damages for the plaintiff’s cervical injuries, that question is not before us for review. The sole question which is now posed for our consideration by virtue of this appeal is one of fact, and that is whether the accident of March 15, 1962, was the legal cause of the plaintiff’s ruptured intervertebral disc.
The defendants contend that there was no causal connection between the accident on March 15, 1962, and the lower back injury sustained on July 10, 1962. In support of this argument, they point to the testimony of Dr. Irwin Cahen, who in testifying as an expert in the field of orthopedics, asserted that as of the date of discharge of the plaintiff by him in late June, 1962, he was completely recovered from any symptoms of injury to his lower back; however, it is significant to point out that no my-elogram or discogram was performed by Dr. Cahen, and his testimony of necessity ends as of the date of his last examination and discharge.
The testimony of Drs. Unkauf and Llewellyn both establish unequivocally that the injury of March 15th caused some damage to the fibers of the plaintiff’s annular ring, which structure forms the inside circumference of the intervertebral disc. They also point to the fact that before the rear end collision the plaintiff never complained of any back symptoms, was active in his trade and was unrestricted in his movements by pain or other symptoms of disc involvement. Following the accident, he complained of pain in the area of the ruptured disc, and eventually the disc had to be removed. Both doctors agreed that the rear end collision did cause some damage to the annular ring at the injured site. •
Moreover, both of these physicians reasoned that it was not unusual for a disc rupture to be initiated by an accident such as the one which occurred on March 15th, with an intervening period of relative normalcy, and an eventual aggravation of the injury by returning to work or engaging in other physical activities.
A careful analysis of the record has created considerable doubt as to whether the actual cause of the ruptured disc was the unusual effort exerted in loosening the *126 pipe or the trauma resulting from the automobile-bus collision. The evidence clearly preponderates to the effect that some injury was incurred by the plaintiff in the automobile-bus collision, which weakened the plaintiff’s annular ring. Obviously, this condition was not diagnosed after the occurrence of the foregoing accident.
The law is clear that the plaintiff bears the burden of proving that the ruptured disc was the natural and proximate result of the injury incurred in the automobile collision and was not the result of the separate, independent and intervening act of loosening the rusty pipe for which the defendant was in no way responsible.[1] In this case, the plaintiff’s own testimony with respect to the severe strain he placed upon his body in an effort to loosen the rusty and corroded pipe creates a substantial doubt in our minds whether or not this unusual exertion was an independent and intervening act which caused the ruptured disc. In short, the whole tenor of the record lead us to the inevitable conclusion that while the preponderance of the evidence discloses that some damage was done to the plaintiff’s annular ring in the automobile accident of March IS, 1962, the plaintiff has failed to bear his burden of proof to establish a direct causal connection between that accident and the ruptured in-tervertebral disc.
However, since the lower court did not consider the injury to the plaintiff’s annular ring, which was incurred in the automobile accident, in its award of damages, the amount thereof is inadequate. Therefore, we are of the opinion that the judgment in favor of the plaintiff should be increased by the sum of $3,000.00 to compensate him for this injury to his annular ring.
For the foregoing reasons, the judgment of the lower court is now amended by increasing the amount thereof from $3,704.76 to $6,704.76, and, as amended, the judgment is affirmed.
Amended and affirmed.

. Rainwater v. Timothy, La.App., 87 So.2d 11 (1956); Livaccari v. United Jewish Appeal, Inc., La.App., 126 So.2d 67 (1961); Waggoner v. Marquette Casualty Company, La.App., 181 So.2d 475 (1965); and Bolin v. Hartford Accident & Indemnity Company, La.App., 204 So.2d 49 (1967).