|! JONES, Judge.
The Appellants, the Regional Transit Authority, Transit Management of Southeast Louisiana, Inc. and Allen A. Santee, seek review of the judgment of the district court awarding $25,0000 in general damages, $2,458.28 in special damages for medical expenses, and $784.18 for a rental car to the Appellee, Peter C. Evans. Following a review of the record, we affirm the judgment of the district court.

Facts and Procedural History

On October 22, 1998, Peter C. Evans was traveling northbound on Canal Street in his 1996 Nissan Maxima. At the intersection of Canal and Broad Streets, after the traffic light turned green for travel, the vehicle in front of Mr. Evans unexpectedly stopped. Mr. Evans leaned forward with his head turned to the left, to look in his outside mirror to determine whether he could drive safely around the vehicle. As he did so, a Regional Transit Authority bus operated by Allen Santee, was unable to stop in time and crashed into the back of Mr. Evans’ car, causing Mr. Evans’ vehicle to collide with the vehicle directly in front of him.
At the scene of the accident, Mr. Evans felt a burning sensation on the left side of his neck, and pain in his left arm. Approximately three weeks after the accident, Mr. Evans sought medical attention from Dr. *439 Charles Baier for what Mr. Evans described as a “pain that would not go away.” Since the wreck, Dr. Baier [ ¿recorded complaints of continued pain in the base of the neck and in the left scapula, together with abnormal sensations in the left arm and hand, some aching around the left elbow and dull headaches. Dr. Baier noted limitation of motion about the neck, and diagnosed Mr. Evans as having sustained a whiplash type soft tissue injury. Dr. Baier had x-rays taken which were essentially normal, and he prescribed an anti-inflammatory, pain relief medication and recommended physical therapy three times a week for two to three weeks.
Mr. Evans attended two therapy sessions, during which time he received a pillow to arch his back, deep-heat treatment, and performed a series of exercises for his neck. Mr. Evans testified that the exercises were not strenuous, and could be done anywhere. Mr. Evans further testified that he did not continue formal physical therapy treatment because his job responsibilities require him to constantly drive out of town. At the time of the accident, Mr. Evans was a manager for BellSouth and was responsible for a territory consisting of three states. Being on the road so often made it difficult for Mr. Evans to continue treatment with a physical therapist. Mr. Evans testified, “it [formal physical therapy] wasn’t available to me. And over and above that, I could do the exercises that he [the therapist] had given me to do at home.”
On December 29, 1998, Mr. Evans returned to Dr. Baier for a follow-up visit. Dr. Baier testified during his deposition, after referring to his notes, that Mr. Evans “went to physical therapy and had some improvement in the mobility of the neck, but he had had increased pain' in the neck. He said he only went twice. He was given some exercises to do, which he did, and he reported at that time that he had only intermittent pain and had no further popping in the neck.” Dr. Baier, 1 ..¡“recommended that he continue the neck exercises that he had gotten at physical therapy.”
Over the next several months, Mr. Evans treated his injuries conservatively by taking over the counter pain medicine on a near daily basis, by performing his neck exercises, and by applying moist heat to relieve the pain. This enabled Mr. Evans to continue to work. Mr. Evans testified that he had not missed a day of work in 28 years. However, he experienced continuous neck pain and had a difficult time pursuing some of his favorite activities. He became afraid that there was something more seriously wrong with his neck.
■ On May 21,1999, Mr. Evans returned to Dr. Baier with continued persistent complaints of neck pain. Dr. Baier testified that, “[h]e [Mr. Evans] continues to have neck pain and stiffness. He was taking aspirin every day. The pain does not radiate down the arms and there is no numbness or tingling. He had been doing the neck exercises regularly.” Dr. Baier recommended a new pain medicine and an orthopedic referral.
On June 21, 1999, Mr. Evans attended an examination with Dr. Roch Hontas, an orthopedic specialist. Dr. Hontas recorded that Mr. Evans was experiencing persistent neck pain since the accident. He observed mild spasms in the left paraspi-nous muscular area, as well as a straightening of the normal cervical lordotic curve. Dr. Hontas’ diagnosis was acute cervical muscular strain. He prescribed a muscle relaxer, and recommended that Mr. Evans continue to take medication prescribed by Dr. Baier and continue to apply moist heat to the neck. He also recommended an aggressive rehabilitation program. However, as noted in his report to Dr. Baier, *440 Dr. Hontas accepted that although he “would like for him (Mr. Evans) to resume an aggressive rehabilitation program ... his work Schedule |4[sic] does not allow much time for it.... Continued home exercises are recommended.... ”
Mr. Evans continued his home exercises with little or no improvement and he continued to experience pain in his cervical region. On October 27, 1999, Mr. Evans underwent an MRI study of his cervical spine, recommended by Dr. Hontas. The cervical MRI was normal, with minimal osteoarthritic changes.
After the MRI was taken, Dr. Hontas’ office advised Mr. Evans that he had no nerve damage in his neck. In early November of 1999, Dr. Hontas prescribed Mr. Evans a Medrol Dose Pack, a six-day dose of cortisone. Mr. Evans took the medication and received significant relief. Since that time, Mr. Evans has not sought any additional medical attention. His condition has continued to progress with occasional neck pain. He continues to do his exercises.
Mr. Evans filed suit against the Transit Management of Southeast Louisiana, Inc., the Regional Transit Authority (hereinafter collectively “RTA”) and Mr. Santee. The trial of this matter was held on March 2, 2001. The Appellants stipulated to liability for the accident, and after hearing the testimony of Mr. Evans and reviewing the submitted stipulated medical evidence, the district court awarded Mr. Evans $25,000 in general damages, $2,458.28 in special/medical damages and $784.18 for a rental car. It is from this judgment that the RTA, and Mr. Santee appeal.

Discussion

The sole issue for review is whether the district court erred by awarding $25,000 to Mr. Evans. The RTA and Mr. Santee argue that the award granted by the district court was an abuse of discretion because Mr. Evans failed to mitigate his damages by not attending therapy sessions. Mr. Evans argues that he 1 ^sufficiently proved damages meriting the award, regardless of treatment due to the severity of the injuries sustained. Further, Mr. Evans argues that under Jacobs as Tutor of Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843 (La.1983), the inconvenience of treatment is a proper consideration in determining the reasonableness of a person’s refusal to submit to treatment, and that under Livaccari v. United Jewish Appeal, Inc., 126 So.2d 67 (La.App. 4th Cir.1961), a plaintiff should not be penalized in the amount recoverable for injuries because of his fortitude and willingness to continue work after injuries, despite pain.
[T]he discretion vested in the trier of fact is “great”, and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Also, to establish that plaintiff failed to mitigate damages, defendants have the burden of proving both that plaintiffs actions after the accident were unreasonable and that this unreasonable conduct aggravated his injuries. Jacobs as Tutor of Jacobs v. New Orleans Public Service, Inc., supra; Johnson v. Louisiana Power & Light Co., 98-2271 (La.App. 4 Cir. *441 6/9/99), 740 So.2d 720, writ denied, 99-2011 (La.10/15/99), 748 So.2d 1152.
In its Reasons for Judgment, the district court found Mr. Evans’ testimony as a whole to be quite credible and believable; particularly, the district court believed testimony regarding the continuing nature of Mr. Evans’ pain and how this pain Ifiimpacted his life on a near daily basis since the accident. The district court did not consider Mr. Evans’ inconsistency with therapy as an indication of no longer suffering pain, and did not “find it questionable that a man with this type of work ethic and character chose to treat his pain outside of a clinic environment so not to disturb his work schedule.” The district court also found that by choosing to treat his injuries at home and continue working, Mr. Evans mitigated his wage losses and did not prolong his physical injuries.
We agree with the analysis of the district court, and find no abuse of discretion with regard to the award or its determination on the issue of mitigation of damages. The evidence before the district court, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the district court’s finding, and we shall not disturb the award on appeal. Courteaux v. State, though Department of Transportation and Development, 99-0353 (La.App. 4 Cir. 9/22/99), 745 So.2d 91. Further, the award as apportioned to the injury is not so high or so low as to shock the conscious. Id.

Decree

For the foregoing reasons, we hereby affirm the judgment of the district court.

AFFIRMED.