REID, Judge.
Plaintiffs Paulette Janney and her husband, Larry Janney, filed this suit for damages against Melvin J. Mizell and his insurer Allstate Insurance Company as a result of an accident which happened on November 18, 1964 on Avenue F in the City of Bogalusa, Louisiana at approximately 12:30 P.M. Mr. Mizell's car was driven by his wife Mrs. Melvin Mizell, and he was a passenger in the car.
Plaintiff Mrs. Janney sought $4334.25 and her husband Larry Janney, as head and master of the community, sought special damages consisting of total loss of 1955 Chevrolet $500.00 and hospital bill of Des-porte Clinic-Hospital $65.75 for a total of $565.75.
The plaintiffs claim that Mrs. Mizell driver of the defendant Melvin Mizell’s car was guilty of negligence which was the sole cause of the accident in that she backed their vehicle into petitioner’s vehicle, backing their vehicle into a business street and into a lane reserved for south bound traffic, failing to keep and maintaining the proper lookout, failing to see what she should have seen, failing to keep the vehicle she was driving under proper control, operating said vehicle in an improper *817 manner, and driving in an inattentive and indifferent manner.
Mrs. Paulette Janney itemized her damages as follows: Abrasions of both knees, injury to her mouth, severe cervical sprain with muscle spasms, and limitation of motion, and x-rays revealed losses of the cervical lordosis in the lower cervical segment.
Defendants answered the suit denying liability, alleging that the accident happened solely through the negligence of Mrs. Paulette Janney and in the alternative plead contributory negligence on the part of Mrs. Janney and the further alternative that Mrs. Janney had the last clear chance to avoid the accident.
The matter was tried''before the Lower Court and the Judge rendered judgment in favor of plaintiff Mrs. Paulette Janney in the amount of $3500.00 and her husband Larry Janney in the sum of $507.25 and costs. He further taxed expert witnesses fees in favor of Dr. H. C. Townsley in the amount of $150.00, Dr. G. Gernon Brown $75.00, Dr. Ray J. Haddad $75.00 and taxed the same as costs. The judgment was against both defendants, Allstate Insurance Company and Melvin J. Mizell.
From this judgment the defendants have brought this appeal to this Court.
The issues in this case are largely factual. Mrs. Janney was driving south on Avenue F and the accident happened about midway into the 700 block of said Avenue F. The Mizell car was parked at an angle into the west side of the street, and had cars parked on each side. Mrs. Mizell started to back out and did back out into the south bound lane of the street when the Mizell car was hit by plaintiffs’ car and the accident happened.
Mrs. Janney testified that she knew that was a business district and she was traveling approximately 20 miles an hour and the Mi-zell car shot out backwards in front of her. She testified that the Mizell vehicle was damaged in the back on the right side (which is borne out by the testimony of the police officer Penton who testified that the damage to the Mizell vehicle was to the right rear). Mrs. Mizell testified that when she started to back out she noticed Mrs. Jan-ney’s car coming south down the street but thought she had enough time to back out before she reached her. She had cars parked on each side of her car and to some extent her vision was bound to have been blurred. She further testified that the Jan-ney car struck her car and she went back into the parking slot but that the back end swung around a little to the left and while it did not strike the car parked on her left it did block its outlet, and this car in order to get out had to drive up on the sidewalk and twist around the Mizell car to get out of its parking space.
Mr. Richard Guy, the insurance adjuster, testified that he took some pictures of the car and that the main impact on the Mizell car was on the right side, and the main impact on the Janney car was to the front, also to the right side. An examination of the pictures taken by Mr. Guy show that the rear end of the Mizell car was damaged more on the right side while the entire trunk of the car was jarred loose it is discernible that the most severe blow happened on the right side.
All of these facts bring us to the conclusion that the accident was caused by the negligence of Mrs. Mizell backing out into the street without ascertaining that she could back out and straighten out before the Janney car reached her and when she got out into the street a sufficient distance in the south bound lane the accident happened. The appellant argues that she had straightened out and she was hit across the entire rear, but we are satisfied from the evidence that this is not correct, and the contention of the plaintiff that the Mizell car was struck from the right rear by the right front of the Janney car is correct.
We, therefore, conclude that the Trial Judge was correct in his finding of liability.
*818 Mrs. Janney testified concerning her injuries. She claimed that her mouth was injured and that she was bleeding from her mouth, and that she had abrasions on both knees where they struck the dash hoard and that her neck developed in two days muscular pains and spasms. She went to see a local doctor, Dr. Townsley, and he treated her and eventually recommended that she wear a Thomas collar. She wore that for some time and complained during her visits to the doctor of pain in her neck. This continued for some time and then she was seen by Dr. G. Gernon Brown and Dr. Ray J. Haddad. These doctors testified that she complained of pains in her neck but they could find nothing objective.
Dr. Haddad in his testimony stated that he found tenderness in the paravertebral cervical musculature and in essence a cervical sprain. He felt that traction would alleviate the pain.
The Trial Judge assigned no written rea■sons and the Court does not have the benefit of his logic in fixing the amount of the ■damages. He appears to have relied largely on the testimony of Dr. Townsley and we .are taking the liberty of quoting certain portions of his testimony:
“Q: And you did make an examination of her?
A: Yes sir, I did.
-Q: Did you have any objective findings to substantiate her complaint of neck pain?
.A: Yes sir, I did.
-Q : What were those findings ?
.A: She had spasm of the right cervical musculature, she had a diminished range of motion both actively and passively, particularly with the hyperextension of the neck.
•Q: Doctor, what is muscle spasm?
.A: Muscle spasm is a condition of irritation to the muscle from any number of causes from which it goes into a contracture and remains contracted rather than relaxing in a normal physiological manner
Can someone pretend it is there ? a
I suppose they could. <
In your training and experience as a doctor, were you able to determine whether or not this was a genuine muscle spasm or was it feigned? a
In my opinion it was genuine. >
In this limitation of motion, explain that to the Court. ¡O
Well, the .¡neck normally will go through a full range of motion in what we call hyperextension which is the neck back in this position, hyperflexion with the chin on the breast bone, lateral rotation to the right and left and the ability to rotate the head in both right and left manners.
And she had limitation of motion? ot
Yes sir, she did. <
Did you find any objective findings ? a
Yes sir, I obtained an x-ray and Dr. Conklin, our Radiologist, stated that there was loss of the, what is described as the cervical lordosis, which is a normal curve of the cervical spine. This was absent on the films and also there was an incidental noting of bilateral cervical ribs which is a fairly common anomaly and there were some very very early arthritic changes described in the 6th and 7th cervical vertebrae.
What date was this x-ray made ? a
The date that I saw Mrs. Janney on the 27th. c
*819 Q: All of this was objective findings, the loss of lordosis ?
A: Yes, this was confirmed by the x-ray.
Q: And as I understand it, that is due to a person being rigid or stiff?
A: Yes, the spastic condition of the muscles will straighten out the cervical vertebrae. Normally they should form a very slight S. Her vertebrae made a very straight line on the x-ray and the contracture of these muscles will pull the spine into a very straight line and this was evident on the x-ray.
Q : And this is an objective finding for this type injury?
A: Yes, this is objective completely.
Q: What did your treatment consist of?
A: Well, initially I placed Mrs. Janney on an analgesic and a muscle relaxant with instructions to return to see what relief she obtained from this. Some relief was obtained, however symptoms were still present. We then used diathermy treatment which is an acceptable medical treatment to relieve spasm of the muscles. This was in December, I don’t recall the exact number. I think she had a series of six, perhaps eight such treatments lasting twenty minutes per day and this gave additional relief but not complete relief of the symptoms and I believe the following month, January, she was fitted with a plastic Thomas collar, a device which supports the neck and lessens the use of the muscles with the thought in mind of reducing the spasms.
Q: Did you instruct her to take any home treatments?
A: No, not per se, except to wear the Thomas collar as much as possible in the daytime to relieve the additional strain on these muscles.
Q: Do you know how long she wore-this Thomas collar?
A: I think perhaps two months.”
******
(iQ: Did Mrs. Janney have a tendency' to be a malingerer? Or to be a. complainer? Explain to the Court, what kind of patient Mrs. Janney-is.
A: Mrs. Janney to me would represent a normal patient who was. complaining not out of proportion, to her symptoms but certainly did voice her complaints of discomfort and pain in her neck.
Q; Did she have a desire to get well ?
A: Yes, I think she was motivated to. get well.”
Plaintiff relies on the case of Cassreino v. Brown, La.App., 144 So.2d 608. This, case holds as follows:
“Awards in the area of $2500-$3500 are-common for those producing severe initial) pain and with however only a short period of residual discomfort, or for those-producing less severe pain but a relatively long period (e. g., a' year or two) of residual discomfort or disability. See e. g.: Ford v. State Farm Mut. Auto. Ins. Co., La.App. 2 Cir., 139 So.2d 798 ($3000); Hilton v. Bankers Fire and Marine Ins. Co., La.App. 3 Cir., 134 So.2d 82 ($3000); Landry v. Southern Farm. Bureau Cas. Ins. Co., La.App. 3 Cir., 125 So.2d 474 ($3500.00).”
We therefore feel that the award of the Trial Court is adequate, not excessive- and in line with our former jurisprudence..
Plaintiff appellee did not answer the appeal and ask for any increase, but stated' that they thought the awards were correct- *820 There is no dispute about the special damages.
For these reasons we failed to find manifest error, or abuse of discretion by the Trial Judge and the judgment rendered herein is hereby affirmed.
Affirmed.