AYRES, Judge.
Only concerned in this appeal is a question of the quantum of an award to adequately compensate plaintiff for personal injuries sustained in a motor vehicle collision. Plaintiff appealed from an award of $1,150. Defendants contend the award is excessive and, in an answer to the appeal, pray that it be decreased.
The issues are factual matters to be resolved from the record. Difficulties attendant to their resolution are increased by the fact that plaintiff was involved in two additional accidents within a period of 17 days after the occurrence of the first accident which forms the basis of this action. The problem is confused and rendered complex by the fact that plaintiff sustained injuries in all three accidents inasmuch as the principle is well settled that a tort-feasor is liable only for the direct and proximate results of his wrongful acts or of those for whom he is responsible. Waggoner v. Marquette Casualty Company, 181 So.2d 475 (La.App., 2d Cir. 1965); Livaccari v. United Jewish Appeal, Inc., 126 So.2d 67 (La.App., 4th Cir. 1961 — cert. denied); Rainwater v. Timothy, 87 So.2d 11 (La.App., Orls.1956). *150 Therefore, it is incumbent upon him to establish that the injuries upon which he bases his claim result from acts for which defendants are responsible and not from separate, distinct, and intervening acts with regard to which defendants had neither connection nor responsibility.
The accident out of which this action arose was, as already stated, the first of a series of three. The accident involved occurred on U. S. Highway 80 about five miles west of Tallulah, Louisiana, about 3:00 a. m. September 25, 1966, when the car which plaintiff was driving was sideswiped and seriously damaged by defendant’s truck which was proceeding in the opposite direction. The second accident was an intersectional collision at U. S. Highway 80 and Spring Street, in Shreveport, about 11:00 a. m. Saturday, October 1, 1966, when the car in which plaintiff was riding as a guest passenger was struck broadside on its right side by another vehicle. The third accident occurred about 7:00 p. m. Monday, October 11, 1966, when plaintiff fell the length of a metal stair at a dormitory at Louisiana Polytechnic Institute.
Plaintiff’s contention that his injuries resulted primarily from the first accident are denied by defendants who assert plaintiff sustained injuries in each of the three accidents and their responsibility extends only to the injuries resulting from the first accident. The record establishes, and there is no contention to the contrary, that the three accidents were separate and independent acts. The latter two accidents, so far as the first is concerned, were intervening acts with respect to which defendants are without liability. The question then is: What does the record establish with respect to the nature and extent of the injuries sustained and the pain and suffering undergone by plaintiff in the first accident? A brief review of the facts relating to the occurrence of the accident and the events which subsequently followed would appear to aid in the consideration of this matter.
At the time of the accident plaintiff was a student at Louisiana Polytechnic Institute in Ruston, Louisiana. On Saturday, September 24, 1966, the day before the accident, plaintiff had ' driven his Mustang automobile from Ruston to Jackson, Mississippi, where he visited a friend. He left Jackson about 12:30 a. m. Sunday, September 25, 1966, on his return trip to Louisiana Tech. When approximately five miles west of Tallulah, on U. S. Highway 80, about 3 :00 a. m., as aforementioned, plaintiff’s automobile, traveling in a westerly direction at about 60 m. p. h., was struck by a cattle truck of the defendant traveling in an easterly direction. After having been sideswiped, plaintiff’s car came to rest on the left, or south side, of the highway in a roadside ditch. The focal point of the impact was on the driver’s door and resulted in heavy damage to the entire left side of the automobile.
After the accident plaintiff was taken from the scene to a clinic in Tallulah and from there to a police station for questioning. Upon leaving the station, a passing motorist offered him a ride to Bossier City where his father picked him up and returned him to his home in Shreveport. Appellant stayed in bed from the time he arrived at his father’s home until 4:30 or 5 :00 o’clock in the afternoon. At that time plaintiff had a very stiff neck and was experiencing the pains of a severe headache. To obtain relief, he went to a local hopital where x-rays were made. He nevertheless returned to Ruston on Monday to attend classes at Tech but instead was hospitalized that afternoon in the Lincoln Memorial Hospital where he remained in traction until Wednesday, September 28, 1966. He was furnished and fitted with a cervical collar and permitted to return to his apartment where he remained in bed until Friday, September 30, 1966. On September 30th, he returned to Shreveport and was involved in the second accident the following day.
The force of the impact of the first collision was, as aforesaid, on the driver’s door *151 of plaintiff’s automobile. The car was struck with great force and heavy damage was inflicted on its left side. The force of the impact was such that plaintiff was rendered unconscious. He was unaware of the events which transpired immediately following the collision. He was in a state of shock. He did not remember how long he stayed in the clinic nor the treatment he received; nor did he remember leaving the clinic and going to the police station.
The indications are most positive that upon plaintiff’s arrival in Shreveport he was still in shock. His father testified he was extremely white in color and had a glassy stare. Upon arriving at his father’s home, approximately five hours after thé accident, he was placed in bed where he remained until 4:30 or 5:00 o’clock in the afternoon, when his pain became so excruciating that he sought relief at a local sanitarium. After x-rays were taken, he returned to his father’s home. Plaintiff nevertheless returned to Ruston on Monday, September 26, 1966, with the intention of resuming his studies and classes at Louisiana Tech. However, he was unable to attend classes. He was confined to his bed. The pain again became so intense that he went to Green Clinic on Monday afternoon. He was examined by Dr. Marvin T. Green who obviously considered his injuries serious. Dr. Green caused plaintiff to be admitted to the emergency room of Lincoln Memorial Hospital and from there to the hospital itself where he was placed in traction and administered physiotherapy, heat treatment, and massage until Wednesday, September 28, 1966.
Concerned with his absenteeism from classes, plaintiff requested that he be permitted to return to his apartment, for which permission was granted after he was fitted with a cervical collar. Plaintiff intended to attend a laboratory class Wednesday afternoon. However, he could not “make it” to class. He was in pain and was unable to walk the distance. He could not move his neck. Pain persisted in his shoulders and worsened in his neck. His condition on Thursday was unimproved. He could not attend classes; he remained in bed all day. This condition persisted throughout Friday when he returned to his father’s home.
Dr. Marvin T. Green was the only doctor who examined plaintiff between Monday, September 26, 1966, and Saturday, October 1, 1966. The first examination was in the Green Clinic, after which plaintiff was admitted, as heretofore stated, to the Lincoln Memorial Hospital, given sedation,’ and placed in traction. The doctor’s diagnosis at the time was that plaintiff had sustained trauma to his body in an automobile wreck with a possible whiplash type injury to his neck. Dr. Green found plaintiff with a stiff neck and muscle spasms described as a whiplash due to trauma to the neck.
That plaintiff actually sustained a whiplash type injury is made clear by Dr. Green’s testimony. This type of injury was indicated by its objective symptoms. Plaintiff was given the usual treatment for such injuries: sedation, muscle relaxants, bed rest in traction. Though Dr. Green’s prognosis was that plaintiff would be in good order after another week or ten days, plaintiff, according to his testimony, showed that, on the morning prior to the second accident, the degree of pain suffered in his neck and shoulders had not subsided since the date of the accident. The degree of pain remained about the same.
Awards for injuries in cases of this character of from $2,500 to $3,500 are common where one sustains severe initial pain, even for only a short period of residual discomfort. Cassreino v. Brown, 144 So.2d 608 (La.App., 4th Cir. 1962). An award of $2,500 was assessed in Attaya v. Zimmerle, 83 So.2d 676 (La.App. 1st Cir. 1955), where the medical testimony showed that plaintiff received a strain of the neck muscles, described by one of the experts as a moderately severe whip *152 lash injury, even though plaintiff was not prescribed a cervical collar as is generally designated in severe cases.
Where a woman and a 12-year-old girl sustained shock in an accident resulting in muscle spasm in the cervical and lumbar regions of their bodies and were hospitalized for a 5-day period without evidence of any treatment by traction or the wearing of a cervical collar, each was awarded $3,000. Ford v. State Farm Mutual Automobile Insurance Co., 139 So.2d 798 (La. App., 2d Cir. 1962).
A 67-year-old woman who sustained injuries to the musculature of her neck without objective symptoms upon which any conclusion could be predicated as to injuries to her back was awarded $3,000 in Martin v. Sanders, 163 So.2d 923 (La.App., 1st Cir. 1964). An award of $4,000 for a similar injury was reduced to $2,500 in Carles v. Hartford Accident and Indemnity Company, 184 So.2d 261 (La.App., 1st Cir. 1966 — writ refused). Plaintiff in Frechou v. Young, 179 So.2d 698 (La.App., 4th Cir. 1965), was awarded $3,000 for a cervical sprain wherein she was momentarily stunned by the impact. An award of $3,500 for a cervical sprain sustained in an accident where pains and spasms manifested themselves two days after the accident was made in Janney v. Allstate Insurance Company, 196 So.2d 816 (La.App., 1st Cir. 1967).
In Downs v. Hartford Accident & Indemnity Company, 116 So.2d 712 (La.App., 2d Cir. 1959), this court approved an award of $3,125 damages to a passenger in an automobile who sustained a moderately severe whiplash injury to his neck and who incurred medical expenses of $125.
We are aware of the rule pronounced in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), and in Ballard v. National Indemnity Company of Omaha, Nebr., 246 La. 963, 169 So.2d 64 (1964), and followed in subsequent cases, that the adequacy or inadequacy of an award should be determined by the facts and circumstances peculiar to the case under consideration ; and that the amounts of awards in “similar” cases are relevant only to determine whether there has been an abuse of discretion, that is, whether the award is so excessive or so inadequate as to be an abuse of discretion. The awards in the cases to which we have referred have been given consideration limited to that purpose.
In view of these and other awards in similar cases, we have concluded there was an abuse of discretion on the part of the trial court due partially, at least, to its misinterpretation of Dr. Green’s diagnosis that plaintiff had sustained only “strained, bruised neck muscles.” We conclude that an award of $2,500 is appropriate in the instant case.
For the reasons assigned, the judgment appealed is amended by increasing the award in favor of plaintiff, Rodney W. McGuire, to $2,500 and, as thus amended, is affirmed at defendants-appellees’ costs.
Amended and affirmed.