302 So.2d 312 (1974)
Dr. Charles H. BAUGHMAN
v.
AETNA CASUALTY & SURETY CO. et al.
No. 9924.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
Joseph P. Brantley, IV, and George R. Covert, Baton Rouge, for Dr. Charles H. Baughman.
*313 William A. Norfolk and A. Michael Dufilho, Baton Rouge, for Aetna and Dr. Wm. O. Vennard.
Before SARTAIN, J., and LaHAYE and BAILES, JJ. Pro Tem.
BAILES, Judge Pro Tem.
This is a suit by Dr. Charles H. Baughman to recover damages for injuries allegedly received in a rear-end collision between the plaintiff's vehicle and that of Dr. William O. Vennard, the insured of Aetna Casualty & Surety Company. Both Aetna and Dr. Vennard are named defendants herein.
The trial court awarded plaintiff judgment in the amount of $25,239.30, being $25,000.00 for physical injuries and $239.30 for hospital expenses. From this judgment plaintiff has appealed. Defendants have neither appealed nor answered the appeal. Therefore, the sole issue before this Court is whether the quantum is adequate.
The plaintiff is a physician-surgeon practicing his profession in Baton Rouge along with Dr. Leo Farmer, in a professional medical corporation known as Baughman Surgical Associates, Ltd. The vehicle which plaintiff was driving at the time of the accident was owned by Baughman Surgical Associates, Ltd., which has brought a direct action against Aetna for damages to the automobile as well as other alleged damages not pertinent to this suit. The companion suit was consolidated for trial with the instant suit. As different issues are involved in the companion suit, a separate opinion and judgment will be rendered therein.
On the occasion of this trip, plaintiff was going to New Orleans for further consultation with his physician Dr. Homer H. Kirgis, a neuro-surgeon, who had previously treated him for cervical injuries he received in California in 1969, when a rented car he was driving on a highway lost one of its front wheels.
The subject accident of the instant suit occurred May 11, 1972, at LaPlace, Louisiana, at the intersection of Airline Highway and Highway 44. The latter serves as an access road from LaPlace to I10 Highway. When plaintiff approached the intersection of the access road with Airline Highway, he drove into the left-turn lane and stopped to await the appropriate left turn signal. At the time the roadway was wet. Immediately to the rear of plaintiff, Dr. Vennard was driving his automobile. When he applied his brakes to stop, his vehicle lost traction and skidded into the rear of plaintiff's vehicle. Considerable damage was inflicted on the rear portion of plaintiff's vehicle.
On our finding that the judgment appealed is correct, we affirm.
A perusal of the testimony of all the medical experts, as well as certain lay testimony considered in conjunction with that of the plaintiff, convinces us that the most significant part of plaintiff's disabling injuries predate the May 11, 1972, accident. With equal conviction, we find that a portion of his pain and suffering is attributable to an aggravation of his physical condition and that such aggravation was caused by the May 11, 1972, accident.
Shortly after the 1969 California accident, plaintiff placed himself under the treatment of Dr. Allen Jackson, an orthopedist of Baton Rouge. This physician treated the plaintiff by conservative methods, but in spite of such treatment plaintiff's condition became progressively worse. Plaintiff's disability had progressed to such extent that he was totally disabled to work during April, May and June, 1970. During June, 1970, Dr. Jackson recommended that plaintiff see Dr. Ruth Jackson of Dallas, Texas, and her report of June 10, 1970, contains this evaluation:
"In my opinion this man will have to limit his activities and he will not be able to do more than minor surgical procedures."
*314 Subsequently, Dr. Allen Jackson suggested that plaintiff have Dr. William Fisher, a neuro-surgeon of Baton Rouge, perform a myelographic examination of his cervical spine. Such was done in October, 1970. The myelogram produced by this examination was interpreted by Dr. Fisher as showing a possible ruptured cervical disc at C-5 level. Conservative treatment was continued.
Plaintiff's condition continued to deteriorate, and on March 9, 1971, plaintiff consulted with Dr. Homer D. Kirgis of Oschner Clinic in New Orleans. Dr. Kirgis, upon examination of the myelograph, made his diagnosis of a ruptured C-5 disc from the Fisher myelogram. Even so, he recommended continuation of conservative treatment. Although continuing to suffer and endure pain and discomfort which at times was disabling, it appears that plaintiff did not seek further medical assistance until he experienced an exacerbation of pain from a bout of sneezing shortly before May 11, 1972. This prompted him to make an appointment to see Dr. Kirgis again for consultation and treatment on May 11, 1972. As noted above, it was on the trip to keep this appointment that the last accident occurred.
Immediately after the accident, plaintiff saw Dr. Kirgis who examined and hospitalized him on that date. He remained hospitalized until May 14, 1972, when he was discharged to return to Baton Rouge.
The day following his return to Baton Rouge, plaintiff placed himself under the care and treatment of Dr. Thomas Flynn. Dr. Flynn also concluded from the Fisher myelogram that plaintiff had a ruptured C-5 disc. Eventually on May 24, 1972, Dr. Flynn performed an anterior interbody fusion at C-5 level. He showed improvement following surgery until about one month later he began to have a recurrence of symptoms similar to previous ones. His present disability has been diagnosed as a herniated disc at C-4 level. Medical opinion is that the fusion at C5-C6 interspace placing greater stress on C4 disc causing it to herniate.
In addition to the physical disabilities, plaintiff has some avowed emotional disturbances. He consulted Dr. Joseph G. Dawson, a clinical psychologist, on May 26, 1972. Dr. Dawson was of the opinion that his emotional problems arose in part from marital discord, and was also attributable appreciably to the May 11, 1972 accident. It was his opinion that once the stress of litigation is removed he should be somewhat improved. Dr. Dawson testified that plaintiff had not told him anything about the California accident but he did mention the California litigation. He was of the opinion that the emotional disturbance caused by the accident should subside within a year.
It is our finding that the May 11, 1972, accident did not bring about any new or additional injuries to Dr. Baughman's cervical spine, but did aggravate his existing disabilities and defects, all of which apparently originated in the rupturing of the cervical disc at the C5-C6 interspace in the 1969 California accident. Additionally, the May 11, 1972, accident contributed to his emotional disturbance for which he was treated by Dr. Dawson.
Appellant assigns as a specification of error that the trial court erred in citing as controlling the decision of McGuire v. Oliver, La.App., 227 So.2d 149 (1969). In its opinion the trial court did cite and quote a portion of the opinion in the McGuire case. We do not find the McGuire case applicable to the instant case except in the sense that it stands for the proposition that the tortfeasors of the 1969 California accident are responsible for the damage therein inflicted on plaintiff. The trial court also cited and quoted a portion of the opinion of this Court in Williams v. Reinhart, La.App., 155 So.2d 51 (1963) wherein the court stated:
"The duty of care and of abstaining from injuring another is due to the weak, the sick, the infirm, equally with *315 the healthy and the strong, and when that duty is violated the measure of damages is the injury inflicted, even though that injury might have been aggravated or might not have happened at all, but for the peculiar physical condition of the person injured. * * *."
Also, the trial court quoted the following from Rachal v. Bankers & Shippers Insurance Co., La.App., 146 So.2d 426 (1962):
"A tortfeasor must take his victim as he finds him. The tortfeasor is responsible for all the natural and responsible consequences of his wrong, even though the consequences of the tort are made much more serious or harmful by reason of a pre-existing physical defect or weakness of the injured person."
If the 1969 California accident was caused by the actionable negligence of third parties these parties are answerable for the damages to plaintiff. The law of McGuire is that these parties are not responsible for any intervening acts which imposed injuries or damages through intervening action. This is the law of McGuire.
Many citations of cases are available to support the responsibility of a tortfeasor such as Dr. Vennard. We believe the cases of Williams v. Reinhart and Rachal v. Bankers & Shippers, supra, are sufficient to support this liability.
The trial court correctly applied the law of Williams v. Reinhart and Rachal v. Bankers & Shippers Insurance Co., supra, to the facts and assessed damages against the defendants for all injuries received by plaintiff as well as for aggravation of his existing physical defects.
The trial court found that the herniated cervical disc was not caused by the May 11, 1972, accident, but that this was an existing disability, a finding in which we concur. The defendants are not responsible for the rupture of these discs. Under the above quoted law, the trial court held the defendant liable for the aggravation, and pain and suffering attendant thereto, of the ruptured discs.
We believe it is a matter about which reasonable men will not differ that the disc at C-5 level was herniated or ruptured prior to the May 11, 1972, accident. Also, the weight of medical opinion is that the present rupture of the disc at C4 was the result of the interbody fusion at C5 level.
From our appreciation of the opinion and decision of the trial court, we do not find that the law of McGuire v. Oliver, supra, was erroneously applied.
On the question of whether the plaintiff's surgical intervention was brought about by the 1969 California accident or the May 11, 1972, accident, we are convinced that plaintiff was and had been since the 1969 California accident actively and continuously plagued with disability from the disc lesion incurred therein. Dr. Allen Jackson was of the medical opinion that plaintiff may have to have surgical relief. Dr. Thomas Flynn considered plaintiff a candidate for surgery prior to the last accident. Mrs. Elizabeth Oliver, a nurse, testified that prior to May 11, 1972, accident plaintiff had neck pain with radiation into his shoulder and down into his arm and fingers. His condition would improve, but after a long day of surgery he would have a recurrence of his problems. Some of the episodes would last from one to two weeks. His actions had been under her almost constant observation. The testimony of the plaintiff himself is sufficient to support this conclusion. Plaintiff testified that his physical condition caused him to restrict his surgical activities between October, 1970, until the May, 1972, accident.
On his examination of plaintiff immediately following the accident of May 11, 1972, Dr. Kirgis entered this observation in his notes:
"This M.D. from Baton Rouge was coming up to see me this A.M. because 48 hours ago upon sneezing, he developed a *316 pain in the neck that extended into the rt shoulder & rt arm & almost immed he noted numbness of the rt index fingerthe discomfort persisted several hrs so he made the present appt.even tho the syms subsided rather markedly, he kept the present appt...."
and another doctor, Dr. Clayton Smith, who examined plaintiff in September, 1972, noted this in his report of examination:
"In the interim, however, his difficulties began to increase with fairly marked pain out into the right upper extremity, it became difficult for him to perform his work as a general surgeon. Unfortunately, on his way to returning to New Orleans for possible definitive care with regards to this difficulty, he was involved in another automobile accident...."
Thus, we agree with the trial court that defendants are not responsible for the ruptured C-5 disc, or the ruptured C-4 disc.
Plaintiff contends the trial court erred in failing to award him judgment for all current and future medical expenses and for past, present and future loss of income. He contends such claims are attributable to the May 11, 1972, accident.
The only medical expense shown to have been incurred by reason of the last accident was the Oschner Foundation Hospital expenses of $239.30 which was included in the judgment rendered herein. No loss of income is proximately attributable to the last accident.
We find no error in the judgment of the trial court in determining that the greater portion of plaintiff's problems and difficulties arose out of the 1969 California accident. This has been resolved as a medically established fact fully discussed above.
Plaintiff's final assignment of error is that of the failure of the trial court to grant a new trial on the basis of newly discovered evidence. If plaintiff is suffering from a lesion of the lumbar vertebra, he had ample opportunity to have been physically apprised of the fact and to have proceeded to litigate the matter at the same time as the other issues were tried. He testified that following the May, 1972, accident he had back pain that radiated around his body to the navel. Being a doctor, he should have investigated this condition at that time. We find no error in the refusal of a new trial by the trial court.
The trial court awarded $239.30 for hospital expenses at Oschner Foundation Hospital. This amount is correct. The sum of $25,000 was awarded plaintiff as general damages for aggravation of his physical condition, for physical pain and suffering and for emotional disturbance. We find this amount to be fair and adequate.
For the reasons assigned, the judgment of the trial court is affirmed. Cost of this appeal to be paid by plaintiff-appellant.
Affirmed.