317 So.2d 199 (1975)
Helen Stevens, wife of/and Kenneth G. STEVENS, Jr., Plaintiffs-Appellees,
v.
GULF AMERICAN FIRE & CASUALTY COMPANY et al., Defendants-Appellants.
No. 10364.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
C. Gordon Johnson, Jr., New Orleans, for defendants-appellants.
Max Mercer, Slidell, for plaintiffs-appellees.
*200 Before SARTAIN, ELLIS and BARNETTE, JJ.
SARTAIN, Judge.
This litigation was initiated by Mr. and Mrs. Kenneth G. Stevens, Jr. for damages arising out of an accident which occurred in St. Tammany Parish on May 2, 1970. Following a trial on the merits and for written reasons assigned the district judge awarded Mr. Stevens the sum of $750.00 for personal injuries sustained by him and $3,624.75 for special damages. Mrs. Stevens was awarded the sum of $30,000.00 for personal injuries, pain and suffering. Defendants have appealed, limiting their assignments of error to the issue of quantum.[1] It is their contention that Mrs. Stevens was injured in a subsequent accident on December 29, 1970 and the plaintiffs have failed to bear the burden of proving that the damages they now seek are causally related to the first accident. We agree and amend.
The jurisprudence pertaining to the burden of proof in instances involving multiple accidents is well settled. A tortfeasor is liable only for the direct and proximate results of his wrongful act. McGuire v. Oliver, 227 So.2d 149 (2nd La. App., 1969) and cases cited therein.
The burden of proving both the existence of the injuries and the causal connection between them and the accident rests with the plaintiff. Such proof must be shown to a legal certainty and by a reasonable preponderance of the evidence. A mere possibility is insufficient. Livaccari v. United Jewish Appeal, Inc., 126 So.2d 67 (4th La.App., 1961), (certiorari denied March 3, 1961.) With the above in mind, we look to the facts in the instant case.
The first accident occurred on the afternoon of May 2, 1970. Mrs. Stevens was riding in the front seat and was looking to the rear seat, talking to her children. She had one elbow on the dashboard when the accident occurred. The offending vehicle had cut in front of the automobile in which she was riding and her husband was driving. The latter could not avoid a collision. Mrs. Stevens testified that she "fell" into the dashboard. She did not receive any obvious injuries at the time although she was nervous and upset. Later that evening she developed a headache. The next morning (Sunday) her neck was very sore and the headache persisted. The following day (Monday) she remained in bed and took aspirin and Bufferin. Dr. Henry T. Cook, a general practitioner and the Stevens' family physician, was out of town on that day so Mrs. Stevens saw him on Tuesday, May 5, 1970.
Dr. Cook admitted her to the Slidell Memorial Hospital immediately and Mrs. Stevens remained hospitalized until May 12, 1970.
Dr. Cook's testimony was taken by deposition. He stated that Mrs. Stevens was complaining of stiffness and pain in the neck. X-rays taken at that time were negative though they "showed changes consistent with muscle spasm." Mrs. Stevens was placed in traction and was prescribed muscle relaxants, pain pills and physiotherapy to the neck area. On her release, Dr. Cook made the diagnosis of "whiplash injury. . . extension-flexion injury to the neck", which he later described as "severe". Mrs. Stevens was told to continue with her medication and return to his office on May 22, 1970.
On May 22, 1970, Mrs. Stevens complained of headaches which Dr. Cook's notes relate commenced about a week previous to this examination. He felt that her neck "appeared improved". X-rays taken on this occasion disclosed no abnormality. She was asked to return in one week. During this interim period Mrs. Stevens apparently saw another physician. Testimony relative to the latter's report was ruled inadmissible and this doctor was not *201 called to testify nor was his report offered in evidence.
Dr. Cook last saw Mrs. Stevens on June 5, 1970. Because of complaints of headaches and dizziness he referred her to Dr. J. Carlos Pisarello, a neurological surgeon in New Orleans. Dr. Pisarello performed a neurological examination of Mrs. Stevens on June 8, 1970 and rendered a report to Dr. Cook under date of June 11, 1970. Dr. Pisarello's examination was negative. However, he prescribed certain medication for her and advised that if her condition did not improve it might be necessary to admit her to a hospital for a more complete neurological investigation. Mrs. Stevens did not return to Dr. Cook. Apparently she did go back to Dr. Pisarello for a complete neurological examination which was performed at the Southern Baptist Hospital in New Orleans between the dates of June 25, 1970 and July 2, 1970. These hospital records were introduced in evidence without further explanation. Dr. Pisarello's subsequent evaluation is not known because only his report of June 11, 1970 is in the record. Accordingly, it must be assumed that all of the tests at the Southern Baptist Hospital were negative.
The second accident occurred on December 29, 1970. In this accident Mrs. Stevens sustained an undisplaced fracture of the left ninth rib, lacerations of the mouth which required sutures, contusions to her right facial area and right knee. She was treated in the Emergency Room at Slidell Memorial Hospital by Dr. Cook. On January 1, 1971, she was seen by Dr. Nix, an associate of Dr. Cook. Her right cheek was very swollen and painful. She was given penicillin. Dr. Cook's examination on January 2, 1971 revealed that her right cheek was still swollen. On January 4, 1971, the swelling had decreased but she was continued on medication. On January 6, 1971, her face had improved but she complained of neck and rib pain. She was administered diathermy treatments to the neck area on January 26, 27, 28, 29, 30, February 2, 4, 6, 16, 17, 18, 24, and 26, 1971. Dr. Pisarello's examination on January 22, 1971 was neurologically negative. She was discharged by Dr. Cook on May 19, 1971.
In June of 1971 Mrs. Stevens experienced neck pains for four days following some swimming exercises. She was again placed on muscle relaxants and administered diathermy treatments on five occasions, the last on June 14, 1971. Dr. Cook referred her to Dr. G. Gernon Brown, an orthopedic surgeon in New Orleans. This specialist examined her on June 21, 1971 and by report dated June 30, 1971 to Dr. Cook stated that he could find no explanation for Mrs. Stevens' persistent neck complaints. He recommended no further treatment but did suggest re-evaluation if "her symptoms persist."
Mrs. Stevens returned to Dr. Cook on September 28, 1971 complaining of neck pains. He instructed her to resume the use of muscle relaxants and return in two weeks. When she returned on November 16, 1971, Dr. Cook arranged for her to see Dr. Brown again. Dr. Brown suggested that she see Dr. Dennis M. L. Rosenberg, a vascular surgeon.
Dr. Rosenberg examined Mrs. Stevens on November 29, 1971 and his report of that date is in evidence. His examination revealed many signs and symptoms of "thoracic outlet compression syndrome" and he suggested that if Mrs. Stevens had been "cleared completely by the neurosurgeon for cervical disc or nerve root compression" that consideration be given to the removal of her first rib.
Dr. Cook then sent Mrs. Stevens to Dr. Raeburn C. Llewellyn, a neurosurgeon. She was admitted to Ochsner Foundation Hospital by Dr. Llewellyn on December 7, 1971. A myelogram was performed on December 8, 1971 which indicated a ruptured cervical disc at the C-5, C-6 level. The disc was removed and an interbody fusion was performed.
*202 She was discharged from Ochsner Foundation Hospital on December 21, 1971 and was seen at regular intervals by Dr. Llewellyn until May 11, 1972. He felt and so testified that Mrs. Stevens had made a very satisfactory recovery from her disc operation.
On October 4, 1972, Mrs. Stevens returned to Dr. Llewellyn complaining of tightness in the interior part of the throat and trouble with swallowing. She was readmitted to Ochsner Foundation Hospital on October 15, 1972 under the care of Dr. Daniel Marvin Adams, III, a specialist in otolaryngology, who performed a laryngoscopy on Mrs. Stevens. This is a medical procedure performed under general anesthesia whereby the vocal chords of the larynx are physically examined. This operation revealed a chronically inflamed area on the left arytenoid which is generally referred to in layman's terms as a "contact ulcer." The area was biopsied which ultimately ruled out any possibility of malignancy. Dr. Adams testified that a contact ulcer could develop as a result of irritation in this area caused by the anesthesia used in the previous operation, by improper speech habits, a type of gastric reflux, or by anxiety. He could not classify the origin of Mrs. Stevens' throat problem and specifically stated that he could not relate it to the first accident, the second accident or the disc operation.
The trial judge in his written reasons for judgment held that all of the above medical procedures, treatment, disc and throat operations were causally related to the accident of May 2, 1970. His written reasons for judgment stated that from the date of the first accident to the date of the throat operation Mrs. Stevens was under consistent medical attention. In this conclusion of fact we find that the trial judge committed manifest error.
Mrs. Stevens went from June 5, 1970 until December 29, 1970, a period of six months, without seeing, calling, or contacting either Drs. Cook or Pisarello who advised her to return to them if her symptoms persisted.
It is very difficult for us to evaluate the testimony of the attending specialists because Mrs. Stevens did not advise Drs. Brown, Llewellyn, or Rosenberg when she went to them for examination that she had been involved in a second accident. Mrs. Stevens explained that she did not feel it necessary to advise these doctors of the second accident because she was referred to them by Dr. Cook and thought that the latter would give them all of the information necessary. These doctors' reports and testimony clearly indicate that the patient's history was given to them by Mrs. Stevens.
When Dr. Llewellyn was advised of the second accident and asked if it bore any causal relation to the cervical disc involvment experienced by Mrs. Stevens, he stated that Dr. Cook, as Mrs. Stevens' personal physician, would be in a better position to answer that question than himself. This question was not propounded to Dr. Cook.
Dr. Llewellyn was queried generally about the causal relation between the first and second accident and the ultimate disc problem. It was in response to this question that he deferred to Dr. Cook's opinion though generally he stated that the first trauma is the significant one. However, he qualified this statement by saying that if the patient did not immediately experience signs of disc injury the second trauma would be of more importance "assuming that the initial injury to the neck had resolved and there had been no signs or symptoms to indicate that irreparable disc injury had occurred." It is obvious that Dr. Llewellyn's opinion was premised on the assumption that Mrs. Stevens experienced significant neck, shoulder and arm complaints following the accident of May 2, 1970 and that these complaints had gradually worsened until he saw her in December of 1971. These assumptions are not borne out by the medical testimony. Dr. Cook's testimony and notes are devoid of any evidence relative to shoulder and arm *203 complaints. She received no diathermy treatments for her neck complaints following her discharge from the hospital on May 12, 1970 until the December accident. She saw no doctor for a period of six months between the dates of the two accidents though she was advised to do so by Drs. Cook and Pisarello. It was only after the second accident that her complaints were consistent and that her medical attention was without significant interruption. In this situation Dr. Llewellyn would attach more significance to the second accident as having either precipitated or aggravated a pre-existing condition.
There is lay testimony in the record to the effect that from the date of the first accident Mrs. Stevens was in constant discomfort, nervous, unable to do her household duties and could no longer participate in civic and community activities. This testimony must be considered along with the medical testimony related above. With respect to the period between the two accidents (May 2, 1970 and December 29, 1970), the lay testimony is totally inconsistent with the medical testimony. Mrs. Stevens made no complaints of neck discomfort to Dr. Cook from May 22, 1970 until December 29, 1970. As stated above, she received no treatment from any doctor between these latter dates. Further, on each occasion following the second accident when Mrs. Stevens experienced neck discomfort or pain she sought medical attention, even following the swimming incident in June of 1971. The extensive diathermy treatments following the second accident not only attests to the seriousness of that accident but also to her efforts to seek medical treatment when she was in pain.
Mr. Stevens' testimony that his wife went back to the doctor (Cook) between the two accidents to obtain relief from pain is obviously in error. Mrs. Stevens and Dr. Cook both acknowledged that she had not done so. Mrs. Stevens was mistaken when she testified that Dr. Cook did not treat her for neck complaints following the second accident. She actually received diathermy treatments to the neck area on six occasions.
Mrs. Stevens' difficulties, which were many and serious, can not be solely related to the accident of May 2, 1970 without engaging in unwarranted speculation and improper consideration of possibilities.
From the above particularized facts we can reach no other conclusion but that Mrs. Stevens has failed to bear the burden of proving a causal relation between the accident of May 2, 1970 and any physical injuries, or pain that she suffered after December 29, 1970, the date of the second accident. We therefore find that as a result of the first accident she sustained a severe whiplash injury. For this injury we feel that the sum of $5,000.00 is just and adequate consideration.
We now turn to the question of special damages. The trial court awarded Mr. Stevens the sum of $3,224.75. A substantial portion of these special damages was incurred at the time of and subsequent to the second accident. Accordingly, we shall cast the defendant for all special damages incurred by Mrs. Stevens up to the date of the second accident, to-wit:

 Mahorner Clinic $ 25.00
 Dr. J. Carlos Pisarello 255.00
 Dr. H. T. Cook 70.00
 New Orleans Anesthesia
 Associates 60.00
 Southern Baptist Hospital 850.75
 Slidell Memorial Hospital 319.45
 ________
 Total - $1580.20

While the defendants suggested that the amount awarded to Mr. Stevens for personal injury sustained by him in the amount of $750.00 was excessive, they conceded in oral argument that it was "probably" within the bounds of the discretion that is accorded the trier of fact in assessing damages. C.C. Art. 1934(3).
Accordingly, for the above reasons the judgment of the district court is amended *204 by reducing the award to Mrs. Helen Stevens to the sum of Five Thousand and no/100 ($5,000.00) Dollars, and by further reducing the award to Mr. Kenneth G. Stevens, Jr. for special damages to the sum of One Thousand Five Hundred Eighty and 20/100 ($1,580.20) Dollars, both together with legal interest thereon from the date of judicial demand until paid. In all other respects the judgment of the district court is affirmed. All costs of these proceedings are assessed against appellants.
Amended, and as amended affirmed.
NOTES
[1] Mrs. Stevens' answer to the appeal was untimely. C.C.P. Art. 2133.