418 So.2d 13 (1982)
Sandra Williams, wife of/and Wyatt WILLIAMS
v.
WINN DIXIE LOUISIANA, INC.
Wyatt Wayne WILLIAMS, et al
v.
Rosa L. TYLER.
Nos. 14912, 14913.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Rehearing Denied August 24, 1982.
*14 Patrick J. Berrigan, Martin E. Coady and James R. Strain, Jr., Slidell, for Sandra Williams and Wyatt Wayne Williams.
Robert Peyton, New Orleans, for Winn Dixie, Inc.
Michael Fitzpatrick and C. Gordon Johnson, New Orleans, for Rosa Tyler and State Farm Mut. Ins. Co.
Before ELLIS, PONDER and SAVOIE, JJ.
SAVOIE, Judge.
In this case, Winn-Dixie appeals the apportionment of a damage award entered against it and in favor of Sandra Williams, who was injured when she slipped and fell in one of its stores. We affirm.
Four months after the slip in this store, Mrs. Williams' automobile was struck from behind by a car driven by Rosa Tyler, and she was again injured. Mrs. Williams filed suits against both defendants, which suits were consolidated for trial. Only Winn-Dixie has appealed the judgment below, and its appeal concedes the proof of both negligence and the quantum of damages suffered by Sandra Williams. Winn-Dixie objects only to the apportionment of damages between itself and Rosa Tyler, the successive tort-feasor. In effect, this appeal challenges the following finding of fact as set forth in the trial court's "Reasons for Judgment":
"... The court has carefully considered and reconsidered the medical testimony involved in this case, in light of the work habits and life style of the plaintiff Mrs. Williams. Even though the medical testimony indicates that eight patients out of ten with disc injuries respond favorably to conservative treatment, the probabilities are that Mrs. Williams would have followed the same course in the absence of the motor vehicular collision caused by Rosa Tyler. The medical testimony indicates, however, that the Rosa Tyler accident aggravated or exacerbated the disc condition caused as a result of the Winn Dixie slip. In view of this conclusion, it would appear fair and equitable to assess Winn-Dixie with five-sixths of the award, and Rosa Tyler and State Farm (the uninsured motorist's insurer) with one-sixth of the award."
The law applicable to this situation is not complicated. Judge Cole has set out the law as it is understood by this court:
"In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, it is well settled that a tortfeasor is liable only for the direct and proximate results of his wrongful act. Stevens v. Gulf American Fire and Casualty Company, 317 So.2d 199 (La.App. 1st Cir. 1975); Baughman v. Aetna Casualty and Surety Company, 302 So.2d 312 (La.App. 1st Cir. 1974); McGuire v. Oliver, 227 So.2d 149 (La.App. 2nd Cir. 1969).
"In such instances, the tortfeasor is not only liable in damages for the injuries caused by his wrongful act, but also for the aggravation of any pre-existing physical defects or injuries. Baughman v. Aetna Casualty and Surety Company, supra; Williams v. Reinhart, 155 So.2d 51 (La.App. 1st Cir. 1963); Rachal v. Bankers and Shippers Insurance Company, 146 So.2d 426 (La.App. 3rd Cir. 1962).
"The burden of proving the causal connection between the damages claimed and the accident by a reasonable preponderance of the evidence rests upon the *15 plaintiff. Stevens v. Gulf American Fire and Casualty Company, supra."

Comeaux v. Barksdale, 342 So.2d 1181 (La.App. 1st Cir. 1977), pp. 1182-3.
The problem faced by the district court, therefore, was to fairly apportion the damages on the basis of the medical evidence offered in this case. In this appeal both parties have focused their attention primarily on the testimony of Dr. Donald E. Richardson, because he was the only medical man to have examined the plaintiff both before and after the second accident.
There is an apparent inconsistency in his various statements on this issue and the reasons for these were carefully explored by the parties' able trial attorneys.
On March 25, 1977, Dr. Richardson wrote a report to Mrs. Williams' disability insurer in which he stated:
"The ... patient has been under my care since February 8, 1977. The symptoms originally arising out of a fall on October 17, 1976. The patient was gradually recovering from this fall which produced neck and right arm symptoms. She was ready to return to her job assignment when she was involved in an automobile accident in February of '77, which caused marked exacerbation of her symptoms, which are still present. From a medical point of view, the patient had recovered from the fall of October 17,1976, and was ready to return to the job assignment when she had the second injury involving an automobile accident which produced new cervical disc symptoms that are now in progress and under therapy."
At trial, Dr. Richardson appeared to retreat from this position. He gave it as his opinion that she suffered ruptured cervical discs in the first accident and that the condition was exacerbated by the second accident. He said that, though a ruptured disc may become "asymptomatic", it cannot heal. "If you injure a disc, it will stay injured."
When asked by the attorney to apportion the responsibility for the damage between the two accidents, Dr. Richardson was in obvious and understandable difficulty. He said:
"You know I can't separate, you know if a person becomes totally asymptomatic, what I have tried to explain before, the patient becomes totally asymptomatic from the cervical disc rupture and they slip down the stairs out there and injure their neck again, the same cervical disc symptoms can come back. It doesn't mean that it is a new, whole new ball game. It simply means that you have reinjured something that was already wrong with you."
It was at this point that the court put the crucial question to the doctor:
"Doctor, can you express an opinion based on the information you have obtained and the history as to her lifestyle, her family set up, her work habits, as to what would have been her course in life, but for the second accident?"
Dr. Richardson replied:
"I don't really know of course, but I suspect that she would have had neck trouble whether she had the second accident or not, but she probably would have gone on the same way with or without the second accident."
* * * * * *
"The type of job she had [dental hygienist] is the type that aggravates neck trouble."
* * * * * *
"Once a disc has been injured, it never heals properly, the cartilege in the disc does not rejuvenate itself and once they have been injured, they tend to progressively degenerate and they will exacerbate and get better."
Though the doctor said that "90% of the patients we see with cervical disc problems will significantly improve with time", nevertheless, it was his opinion, based on his prolonged treatment of this patient and based on his knowledge of her lifestyle, that her condition would have deteriorated in much the same way with or without the second accident.
*16 Defendant, in brief, argues strongly that the trial court has misconstrued Dr. Richardson's testimonythat he did not mean that his patient would have required the three neck surgeries she underwent whether the auto accident occurred or not, but that he only meant she would have had "flare-ups" from time to time in the future, whenever she was subjected to trauma. We find this argument unpersuasive. Dr. Richardson opined that the cervical discs ultimately removed by surgery, were ruptured in the Winn-Dixie accident and that had Mrs. Williams pursued the same lifestyle thereafter, the discs would have degenerated, requiring their removal.
We are satisfied that the plaintiff has borne her burden of connecting her damages to the particular accidents at issue and that the apportionment finally settled upon by the trial court is reasonably supported by the evidence in the record and lies within the area of discretion afforded to triers of fact by our law. Whatley v. Red Ball Motor Freight, Inc., 351 So.2d 850 (La.App. 2d Cir. 1977); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
For the above and foregoing reasons, the judgment of the trial court is hereby affirmed. Appellant is to pay all costs.
AFFIRMED.