|2FOGG, J.
In this personal injury action, defendants appeal the trial court’s judgment in favor of plaintiff, Olevia Coleman, raising issues concerning liability and damages. For the following reasons, we reverse.
On September 10, 1994, Antoinette Coleman was driving her 1980 Fleetwood Cadillac with her mother, Olevia Coleman, riding as a guest passenger, when her vehicle was struck by an uninsured motorist. Antoinette and Olevia Coleman sued the other driver and their uninsured motorist (UM) carrier for damages. The UM carrier and the plaintiffs settled that lawsuit for the policy limits of $10,000.00.
On October 3,1994, Antoinette Coleman, was again transporting her mother in the passenger seat of her 1980 Cadillac, when she exited the interstate, stopped on an off-ramp and waited to merge into traffic. Beverly Lewis stopped her vehicle behind the Coleman vehicle. In anticipation that the traffic in front of her would move forward, Ms. Lewis took her foot off her brake, and her vehicle rolled into the rear-end of the Coleman vehicle.
Antoinette and Olevia Coleman filed suit for damages, naming as defendants Beverly Lewis and her insurer, United Services Automobile Association (USAA). After a bench trial, the trial judge rendered judgment in favor of Olevia Coleman and against USAA in the sum of $10,067.14. The defendants appeal, asserting initially that the trial court manifestly erred in finding that Olevia Coleman proved by a preponderance of the evidence that her injuries resulted from the accident that occurred on October 3,1994.
In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, a tortfeasor is liable only for the direct and proximate results of his 13wrongful acts, including aggravation of any preexisting injuries. Although a tortfeasor takes his victim as he finds him, the tortfeasor cannot be held liable for injuries which are not attributable to the wrongful act. Giesler v. U.S. Fidelity and Guar., 498 So.2d 292 (La.App. 4 Cir.1986); Sanders v. Collins, 551 So.2d 644 (La.App. 1 Cir.), writ denied, 556 So.2d 1261 (La.1990).
In such situations, the plaintiff is required to prove a causal connection between the damages claimed and the accident by a reasonable preponderance of the evidence. Williams v. Winn Dixie Louisiana, Inc., 418 So.2d 13 (La.App. 1 Cir.1982). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
In this case, the facts concerning the accident are undisputed. Beverly Lewis testified that she was driving a 1992 Mazda Navaho at the time of the accident; her vehicle was not damaged in the accident *909 and she was not injured. She stated that she was stopped a few feet behind the Coleman vehicle, when she, expecting the traffic to move forward, lifted her foot from the brake, causing her vehicle to, roll into the back of the Coleman vehicle. She did not use the accelerator prior to the accident. The Cadillac’s rear bumper and a rear light were damaged in the accident. The cost to repair this damage was estimated to be $392.53. .
On the issue of causation with respect to Olevia Coleman’s alleged injuries, the evidence before the trial court consisted of the testimony of Olevia Coleman, Beverly Lewis, Dr. Henry Dixon, Dr. Thad Broussard, and Maricha Veals, a daughter of Olevia Coleman who was not driving the vehicle at the time of Rthe accident. Therefore, we must determine whether the trial court erred in concluding that, by this evidence, Olevia Coleman proved causation by a preponderance of the evidence.
At trial, Olevia Coleman testified that after the first accident on September 10, 1994, she was a little dizzy and her head hurt constantly. She was weak, her right shoulder and lower back were stiff and somewhat painful, and her 'right knee and thigh were also injured. On September 20, 1994, on the advice of her attorney, she went to Dr. Henry Dixon, an internist, who took x-rays, performed light therapy, and prescribed medication. She also testified that she went to Earl K. Long Hospital once.
Dr. Henry Dixon testified that he first saw Olevia Coleman on September 20, 1994. She advised him that she was in an accident on September 10, 1994, when another car struck the passenger side of the car in which she was riding as a guest passenger. She complained of headaches and pain in her right shoulder, lower back region, right knee, and right ankle. On physical examination, Dr. Dixon detected evidence of spasm in the posterior cervical spine, spasm along the right paravertebral muscle (muscles which run along the side of the spine), tenderness with flexion and extension, and tenderness in the right knee. Her neurological exam was within normal limits. Initially, Dr. Dixon was of the opinion that Olevia Coleman was suffering from a cervical spasm, spasm in the lumbar area, and probably a sprained right knee.
He ordered x-rays of the cervical spine, the lumbar spine, and the right knee. Those revealed arthritic changes at C-5 through C-7 without disc narrowing, minimal scoliosis in the lumbar area, and a normal right knee. He prescribed an anti-inflammatory drug and magnatherm (magnetic heat) to the painful areas three times a week.
|sHe then saw her on September 21, 23, and 26 for heat therapy. On September 26th, she complained of a pounding headache with blurred vision and nausea. He thought these symptoms were due to underlying anxiety and prescribed anti-anxiety and anti-depressant medication.
Approximately one week later, the second accident occurred. At the time of the second accident on October 3, 1994, Olevia Coleman was again seated on the passenger side of the front seat of the car, wearing her seat belt. She testified that, upon impact, she was thrust forward, and then the seat belt “snatched” her back. At trial, she testified that she experienced weakness, and almost blacked out. She stated that her neck, arm, knee, and lower back were throbbing. She also experienced spasms in her lower back and the shoulder area of the right arm. She testified that the pain in her neck, right arm, right shoulder, lower back and knee increased after the second accident.
She testified further that she went to see Dr. Dixon the same day as the second accident, discussed the accident with him and told him she was in great pain. Additionally, Olevia Coleman’s daughter, Mari-cha Veals, testified that her mother’s condition worsened after the second accident.
In contrast, Beverly Lewis testified that, after the accident, she went to the passen *910 ger side of the Coleman vehicle and spoke with Olevia Coleman. Olevia Coleman said she was okay, got out of the vehicle, and did not complain. Beverly Lewis testified that she overheard Olevia Coleman tell the police officer that she was fine.
Furthermore, Dr. Dixon testified that he did not see Olevia Coleman the day of the second accident. Rather, he testified that he saw her seven days later on October 10, 1994, at which time she continued to complain of pain in her right shoulder and | (,knee. He testified that she said she was involved in another accident on October 3, but stated that she had no new problems. Dr. Dixon testified that there were no changes in her condition at the time of that visit. Furthermore, she did not describe the accident of October 3rd to him in detail until her next visit on October 21st. At that visit, the right shoulder and lower back pain continued and evidence of spasm in the right shoulder and in the lumbar area continued. He opined that any impact of the second accident would have been evident at her visits on October 10 and 21. None was evident; therefore, the second accident did not aggravate her preexisting injuries.
Dr. Dixon next saw Olevia Coleman on November 28; at that visit, she complained of pain radiating down to the right knee from the lower back, and still had spasms in the right lower back region. He scheduled an MRI of her lower back, but Olevia Coleman did not keep the appointment.
Dr. Thad Broussard, an orthopedic surgeon, first saw Olevia Coleman on December 2, 1994 on the referral of her attorney. Her initial complaints were neck and back pain. Test results showed probable disc disease or soft tissue disease. Her complaints over time were pain in the low back, right lower extremity, cervical spine, and right upper extremity. He testified that she did not tell him which accident caused her problems, and he could not tell which accident caused the problems. Based on her history, she had an onset of symptoms after the first accident and an onset of symptoms after the second accident. Since she saw him after the second accident, he would give a little more weight to that event. However, based on the fact that Dr. Dixon saw her seven days after the accident and no new symptoms were present, Dr. Broussard would say that the second accident did not have very much influence on the patient.
|7In this case, the trial judge concluded that, by the above evidence, Olevia Coleman proved her case for causation as to her injuries. We find manifest error in this determination. The testimony of Ole-via Coleman’s doctors fails to express definitively that the second accident caused her injuries. Dr. Dixon opined that all her injuries resulted from the first accident. While it is true, as the plaintiff suggests, that Dr. Broussard testified that the second accident worsened Olevia Coleman’s symptoms, his opinion was premised upon the patient’s history which he had received solely from the patient. When questioned as to what his opinion would have been had he known that Dr. Dixon had examined the patient seven days after the accident and again on October 21, 1994 and found no changes in her condition after the second accident, he stated his opinion would have been different. He stated that based on the fact that Dr. Dixon saw her seven days after the accident and presented no new symptoms, he would say the second accident did not have much influence on the patient. He stated, “Any reasonable person whether a doctor or not would assume the same.” He stated that he would probably consider the second accident as intensifying her symptoms only because it was after the second that she sought his advice.
Furthermore, while it is true, as the plaintiff states, that Dr. Dixon found two new symptoms after the second accident, he never related those to the second accident. Furthermore, Dr. Broussard stated that subsequent test results revealed that the two symptoms diagnosed by Dr. Dixon were not spasms as Dr. Dixon initially *911 thought. Dr. Broussard’s opinion was made with the benefit of an MRI and other tests, which were not available to Dr. Dixon, whose opinion was based solely on physical examination and discussion with the patient. Also, Dr. Dixon testified that he would defer to the opinion of the specialist | «on these issues.
After a thorough review of the facts of this particular case, we find that the trial court, committed manifest error in its factual findings relating to the cause of Olevia Coleman’s injuries. Although a plaintiffs own reasonable testimony, if accepted as true, is sufficient to establish causation, Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971), the evidence as a whole must show that the causation sought to be proved is more probable than not in order for a plaintiff to carry her burden of proving a causal connection between the damages claimed and the accident by a reasonable preponderance of the evidence. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840 (La.1989). See Stobart v. State, Through Dept. of Transp. and Development, 617 So.2d 880, 882-88 (La.1993).
In this case, Olevia Coleman’s testimony is inconsistent with the history she gave to her first treating physician, a history that is supported by the factual circumstances surrounding this case. Therefore, we find the trial court committed clear. error in finding that the evidence as a whole shows that the accident of October 3, 1994 aggravated Olevia Coleman’s preexisting condition.
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of the defendants, dismissing the plaintiffs suit with prejudice. Costs are assessed against Olevia Coleman.
REVERSED AND RENDERED.
GUIDRY, J., dissents and assigns reasons.